## CHAVANNES V. PRIESTLEY.

1. **Constitutional Law :** DUE PROCESS : ADJUDICATION OF INSANITY. The provision of the constitution, that "no person · shall be deprived of life, liberty or property without due process of law," does not require notice to a person, or his appearance, before he can lawfully be adjudged insane and restrained accordingly. And so section 1400 of the Code, which contemplates the presence of a person whose insanity is sought to be established, in all cases except where, upon inquiry, it is made to appear that such presence would probably be injurious to the person, or attended with no advantage to him, is not unconstitutional, in that it contemplates that a person may be adjudged insane, and restrained accordingly, without notice or appearance. (Compare *Black Hawk County v. Springer*, 58 Iowa, 417.) So *held* in an action for damages for calling plaintiff insane, where the defense was that he had been adjudged insane according to statute, and the adjudication had never been revoked nor the plaintiff discharged from custody.

2. **Parties to Actions :** INSANE PLAINTIFF. A person adjudged insane cannot maintain an action in his own name. He can sue only in the name of his guardian, and an action in his own name will be dismissed upon proof of the facts. (See Code, sec. 2569.)

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FILED, MAY 28, 1890.

THE plaintiff is an attorney by profession, and the defendant is a physician. Both are residents of the city of Des Moines. In September, 1888, the plaintiff filed his petition, alleging that the defendant said of and concerning him : "Chavannes is insane ; Chavannes is not in his right mind [ meaning that the plaintiff was crazy, and unfit to attend to his business as an attorney ]." The defendant's answer is in four divisions, averring, in substance: *First*, that the plaintiff had been by the commissioners of insanity of Polk county adjudged insane and ordered confined at the asylum at

Mt. Pleasant, which judgment or order had never been set aside or canceled, nor the plaintiff released nor discharged from such custody, and that at the commencement of this action he was in the custody of Mrs. Carrie Chavannes, as his guardian, by order of said commissioners, and that the action must be abated ; *second*, a general denial ; *third*, that at the time of speaking the words charged he was the medical adviser of the plaintiff, and that the words were spoken to persons in care of plaintiff, in the discharge of his duties, or by him as a witness under oath ; *fourth*, that the statements were true. The plaintiff, for reply to the first division of the answer, denies the statements, and says that if true they are of no force or effect, for the reasons : *First*, that he had no notice of the pendency of the proceeding before the commissioners, and was not present in person, or represented by an attorney ; *second*, that Mrs. Carrie Chavannes had never been duly appointed as his guardian ; *third*, that the act creating the board of commissioners of insanity is void, in this : That it provides for no notice of such actions, and that the effect is to restrain a person of his liberty without due process of law. By stipulation, the issues presented by the first division of the answer and the reply thereto were submitted to the court without a jury, and the record of the commissioners put in evidence, and upon its examination the district court sustained the plea in abatement, and dismissed the action ; and from a judgment favorable to defendant the plaintiff appeals.

*Appellant, pro se,* and by *Carpenter & Evans.*

*Read & Read,* for appellee.

GRANGER, J.—The range of the arguments embraces many questions that do not arise upon the record before

1. CONSTITU-
TIONAL law :
due process :
adjudication
of insanity.

us. The district court held the plea in abatement good. If it erred, the cause must be remanded for further proceedings, and its judgment had on other questions presented in argument before we are to consider them.

The commissioners' record before us unmistakably shows that inquiry was instituted upon a complaint duly made, and the plaintiff adjudged insane, and by the commissioners' order he was placed in the insane hospital for care and treatment; that the commissioners thereafter, upon application of his wife, ordered his removal from the hospital, and placed him in her custody. These proceedings were by the commissioners had in the absence of the plaintiff, and without notice to him. The district court held, and correctly, that no notice was required under the statute in such a proceeding, and hence we are brought directly to the important question in the case: If the statute, in so far as it authorizes such a proceeding in the absence of a party and without notice to him, is void?

Such a question could not well be considered, in the absence of the law showing the exact facts or conditions under which it authorizes jurisdiction. These proceedings are provided for in a chapter of the Code on the subject "Of the care of the insane," which provides for the regulation and control of the several hospitals for that purpose, and of the manner of admitting subjects thereto, and determining their fitness therefor. In each county there is organized a board of commissioners of insanity of three members, viz., the clerk of the court, by virtue of his office, and a respectable practicing physician, and a lawyer, whose duty it is to hear complaints and determine the questions presented, and upon whose order proper subjects may be admitted to the asylum. Applications for such admission are made in the form of informations under oath. The particular facts under which jurisdiction is taken, and determination had, are shown by Code, section 1400, as follows: "Sec. 1400. On the filing of such information, the commissioners may examine the informant under oath, and, if satisfied that there is reasonable cause therefor, shall at once investigate the grounds thereof. For this purpose they may require that the person for whom such admission is sought be brought before them, and

that the examination be had in his presence ; and they may issue their warrant therefor, and provide for the suitable custody of such person until their investigation shall be concluded.    Such warrant may be executed by the sheriff or any constable of the county; or, if they shall be of opinion from such preliminary inquiries as they may make, and in making which they shall take the testimony of the informant, if they deem it nec-essary or desirable, and of other witnesses if offered, that such course would probably be injurious to such person, or attended with no advantage, they may dispense with such presence.  In their examination they shall hear testimony for and against such application, if any is offered.   Any citizen of the county, or any rela-tive of the person alleged to be insane, may appear and resist the application, and the parties may appear by counsel, if they elect.   The commissioners, whether they dispense with the presence before them of such person or not, shall appoint some regular practicing physician of the county to visit such person, and make a personal examination touching the truth of the information, and the actual condition of such person, and forthwith report to them thereon.   Such physician may or may not be of their own number; and the physician so appointed and acting shall certify, under his hand, that he has, in pursuance of his appointment, made a careful personal examination, as required ; and that on such examination he finds the person in ques-tion insane, if such is the fact ; and, if otherwise, not insane ; and, in connection with his examination, the said physician shall endeavor to obtain from the rela-tives of the person in question, or from others who know the facts, correct answers, so far as may be, to the interrogatories hereinafter required to be pro-pounded in such cases, which interrogatories and answers shall be attached to his certificate.''

Of course, if the commissioners' warrant should issue, and the party is brought before the board, there would be both notice and presence ; and the law seems

to contemplate such presence, except if the board at the preliminary inquiry, when the information is filed, shall be of opinion therefrom that such a course would probably be injurious to such person, or attended with no advantage, it may be dispensed with. Now, it is easy to imagine a case in which such presence could not with safety to the person be had, nor could such a hearing with safety be had in his presence, and such persons are those most likely to need the beneficial provisions of the law, and they must be deprived of them if there is a constitutional barrier to these proceedings, in their absence, and without notice. We assume, of course, that no importance is attached to an idle form of notice in such a case; as where it would not be understood because of the infirmity, or the notice for any reason be merely formal. The law sometimes provides for these formal notices, but it is in anticipation of results not to be contemplated in this class of proceedings with the precautionary provisions of the statute under which they are conducted. The law requires that a physician shall visit the person, and examine him, and shall confer with relatives upon the subject; so that in every case there is actual notice to relatives who may be present, and would be likely to take an interest in behalf of the person. Any citizen of the county, or relative, may appear and resist the application, and a full and free inquiry is permitted. The law and the courts are so jealous of the rights of persons, both as to liberty and property, that they view with distrust any proceedings that may affect such rights in the absence of notice; and to our minds this same jealousy pervades the statute in question, and the ruling consideration in allowing these proceedings, in the absence of the party and without notice, is personal to him, and designed for his interest. It is not a case in which he is adjudged at fault, or in default, and for which there is a forfeiture of liberty or property, but only a method by which the public discharges its duty to a citizen. The misfortunes of citizens sometimes place them where, for their care and preservation, restraints are necessary, and such

restraints are even justified at the hands of private persons. They are not in such cases "deprived of liberty," within the meaning of the constitution ; and plaintiff bases his claim in this respect upon the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law."

The law contemplates the presence of a person whose insanity is sought to be established in all cases, except where, upon inquiry, it is made to appear that such presence would probably be injurious to the person, or attended with no advantage to him. Of the latter reason for his absence we need express no opinion. The former is sufficient. If mistakes are made as to any facts, the proceeding is not conclusive, but every avenue known to the law is open as a means of correction and release. In this connection, see the case of *Black Hawk County v. Springer*, 58 Iowa, 417, which also involves a construction of the same constitutional provision as applicable to such a proceeding as this, although upon somewhat different grounds ; but on general principles the cases seem to be alike, and it is there held, as in this case, that the constitutional provision has no reference to proceedings of this character. We do not think the proceedings by which the plaintiff was adjudged insane are void because of the law not providing for notice, nor because of his absence from the proceedings. Regarding the law as valid, we must assume that his absence was justified by the facts.

It is a case, then, in which the plaintiff was judicially found to be of unsound mind, and, under the provisions of Code, section 2569, the action 2. Parties to actions: insane plaintiff. must be brought by his guardian. This was not done, and the court for that reason properly dismissed the action. Counsel have discussed several questions, such as that the records do not show that the board convened at the proper place, but no such questions are presented by the record. The reply presents only the questions we have discussed.

AFFIRMED.