## *Ex Parte* GEORGE C. SCUDAMORE.

CONSTITUTIONAT LAW—LUNACY—COUNTY JUDGE'S COURTS HAVE
JURISDICTION OF—DUE PROCESS OF LAW—JURY TRIAL IN
LUNACY PROCEEDINGS.    SECTIONS 1200—1201—1202 AND
1203 GENERAL STATUTES OF 1906, CONSTITUTIONAL.

1. Sections 1200, 1201, 1202 of the General Statutes of 1906 and
   section 1203 of the same as amended by Chapter 5706 Laws of
   1907, do not violate section 17 of Article 5 of the Florida con-
   stitution in conferring upon county judges' courts jurisdiction
   to inquire into the alleged insanity of persons, and to commit
   lunatics to the insane asylum, and to appoint guardians for
   them.    Neither do said provisions of law violate section 3
   of the Declaration of Rights in our constitution, in not providing
   for a jury trial in such lunacy proceedings.   The latter provision
   of our constitution was not designed to *extend the right* of
   jury trial, but merely *secures* such right in those cases *in which
   it was matter of right before the adoption of the constitution.*
   Neither do said sections of our laws violate section 1 of
   Article 14 of the Federal Constitution, nor section 12 of the
   Declaration of Rights in the Florida constitution in the respect
   of depriving the citizen of his liberty and property without
   such notice as is   demanded by due process of law.   The
   provision in said sections requiring the *personal presence* of
   the alleged lunatic is sufficient *notice* to him to fulfill the
   requirements of these provisions of the Federal and State
   constitutions.

2. Sections 1962, 1963, 1964 and 1965 of the General Statutes of
   1906, making provision for the filing of a bill in equity by any
   relative or friend of any adjudged lunatic, at any time, to have
   his sanity inquired into by the Chancellor, and providing for
   his immediate release, and restoration to him of his property if
   found upon such inquiry to be sane, is, of itself a sufficient pro-
   tection of the liberty of the subject to meet the constitutional
   requirements of due process of law, even though no sort of
   notice to the lunatic was given in the initial proceeding by
   which he was so adjudged.

This case was decided by the Court *En Banc.*

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*Reeves & Watson,* for petitioner;

*Blount & Blount & Carter,* contra.

TAYLOR, J.—The petitioner, George C. Scudamore, through his brother Charles C. Scudamore, invoking the original jurisdiction of this court in *habeas corpus* cases, filed here his petition for such writ, alleging that he was detained in custody and unlawfully deprived of his liberty by the sheriff of Escambia county and his deputy under and by virtue of an order, judgment or decree made by the county judge of Escambia county adjudging him, the said George C. Scudamore, to be insane and directing the said sheriff to deliver him to the superintendent of the Florida Hospital for the Insane for care, maintenance and treatment. Upon the issuance and service of the writ the said sheriff in obedience thereto produced the person of the said George C. Scudamore to the court here and made the following return to the writ:

"In the Supreme Court of the State of Florida.

J. C. Van Pelt for return to the writ of habeas corpus issued out of the supreme court of Florida on March 4th, 1908, upon the application of Chas. C. Scudamore, requiring the respondent to produce the body of G. C. Scudamore together with the cause of his imprisonment, alleges as follows:

That on the......day of...............the said G. C. Scudamore was arrested on a warrant issued out of the county judge's court of Escambia county, Florida, charging him, the said Scudamore, with embezzlement of the funds of the Pensacola Bank and Trust Company of the value of eight thousand ($8,000.00) dollars; that

during the progress of the trial of the said Scudamore, it was suggested to the said county judge by L. J. Reeves, Esq., of counsel for the said Scudamore, that the said Scudamore was insane; and that the examination ought not to proceed until the court was satisfied upon this point and thereupon the said county judge appointed a committee consisting of three practicing physicians in good professional standing and two laymen, to-wit: Dr. S. R. Mallory Kennedy, Dr. D. W. McMillan, Dr. J. H. Bickerstaff, John E. Stillman and J. S. Reese; that thereupon the said committee caused the said G. C. Scudamore and many witnesses to be brought before them and after a thorough examination of the alleged lunatic and of the said witnesses, reported to the said county judge, that the said Scudamore was insane and in their opinion required confinement; copy of said report is hereto attached marked 'Exhibit A;'

That thereupon the county solicitor of Escambia county, Florida, filed four informations in the criminal court of record of Escambia county, against the said G. C. Scudamore, charging him with embezzlement, forgery and other crimes; and thereupon the said Scudamore was taken before the judge of the said criminal court who decided that in his opinion the said Scudamore was insane and declined to proceed with his trial; but refused to grant bail and directed that he be committed to the custody of the sheriff for safe keeping; copy of said order is hereto attached as 'Exhibit B;'

That thereupon the said attorneys for said Scudamore applied to J. P. Stokes, court commissioner of Escambia county, for a writ of habeas corpus, admitting the said Scudamore to bail; and upon hearing the bail was fixed at ten thousand ($10,000.00) dollars;

On the 20th day of February, 1908, five citizens of Escambia county: Dr. S. R. Mallory Kennedy, Dr. D. W. McMillan, Dr. J. H. Bickerstaff, John E. Stillman

and W. B. Crawford made and filed a statement with the county judge in accordance with the statute of the state of Florida alleging that the said Scudamore was in their opinion insane, and that an examination into the question of his insanity ought to be made; copy of said statement is hereto attached as 'Exhibit C;'

That thereupon the said county judge of the said county in accordance with the provisions of the said statute appointed a committee consisting of Dr. W. C. Dewberry, Dr. E. F. Bruce and J. N. Andrews to proceed with the said examination; that thereupon the said committee proceeded to the residence of the said G C. Scudamore and made said examination, and after making said examination made report of their finding to the said county judge, who thereupon notified the attorneys of the said Scudamore; copy of said report is hereto attached marked 'Exhibit D;'

That on the......day of......Messrs. W. H. Watson and J. H. Smithwick who had been attorneys for G. C. Scudamore, and Chas. C. Scudamore the petitioner herein, and prior to the rendering of a decree, appeared before the said county judge and protested that the said judge should not act upon the said report other than to commit the said Scudamore to the county poor house, or to the custody of his friends; but the said judge then and there thought that he ought to be committed to the State Hospital for the Insane, and thereupon issued a commitment directing this respondent to take him into his custody; copy of said commitment is hereto attached as 'Exhibit E;'

That this respondent holds the said Scudamore under and by virtue of said commitment.

Respectfully submitted,

J. C. VAN PELT, Sheriff."

"Pensacola, Fla. Feby. 19, 1908.

We the undersigned commissioners appointed to in-

quire into the mental condition of G. C. Scudamore find that he is now mentally incapable of conducting a rational defense.

JOHN E. STILLMAN,

S. R. MALLORY KENNEDY,

J. H. BICKERSTAFF,

J. S. REESE,

DAN W. MCMILLAN.

### "EXHIBIT A."

"And we further deem it our duty to recommend that proper measures be taken to safeguard the community from possible acts of violence, that the said G. C. Scudamore might commit, owing to his mental condition.

JONH E. STILLMAN,

S. R. MALLORY KENNEDY,

J. H. BICKERSTAFF,

J. S. REESE,

DAN W. MCMILLAN."

"Wednesday, February 19, 1908.

No. 40.

State of Florida
vs.
George C. Scudamore.

} Drawing Bill of Exchange without authority and with intent to defraud.

No. 53.

State of Florida
vs.
George C. Scudamore.

} Embezzlement by bank officer.

No. 54.

State of Florida
vs.
George C. Scudamore.

} Forgery and uttering forged paper.

No. 55.
State of Florida
vs.
George C. Scudamore. } Drawing Bill of Exchange without authority.

The defendant, George C. Scudamore, being present in court, and being represented by counsel, upon suggestion of the state and which suggestion is acquiesced in by counsel for defendant, and upon consideration the court finds that the defendant is now mentally incapable of conducting a rational defense.

The defendant by his counsel thereupon demanded that the court fix and determine the amount and conditions of bail for the defendant, which the court refused to do, for the reason of the finding of the court of the present mental condition of the defendant, and that therefore the defendant is not entitled to bail, and it is ordered that the defendant be remanded to the custody of the sheriff.

### "Exhibit B.

"In the court of county judge in and for Escambia county, Florida.

To the judge of said court:

Your petitioners respectfully represent that they are citizens of the county of Escambia and state of Florida; that G. C. Scudamore is also a citizen of the county and state aforesaid; that he is personally well known to each of your petitioners, and no more than one of the undersigned is related by blood or marriage to the said G. C. Scudamore, and that their knowledge of his physical and mental condition is sufficient to warrant them in the belief that he is insane.

They therefore pray that examination be instituted

and made into his physical and mental condition as by law is provided in such cases.

This 20th day of February, A. D., 1908.

> JOHN E. STILLMAN,
> J. H. BICKERSTAFF,
> DAN W. MCMILLAN,
> S. R. MALLORY KENNEDY,
> W. B. CRAWFORD."

"EXHIBIT C.

"In court of county judge in and for Escambia county, Florida.

STATE OF FLORIDA,
COUNTY OF ESCAMBIA.

In the name of the state of Florida: To the sheriff of said county, greeting:

Whereas, John E. Stillman, J. H. Bickerstaff, M. D., Dan W. McMillan, S. R. Mallory Kennedy and W. B. Crawford, have this day filed their petition suggesting the insanity of G. C. Scudamore, a resident of the county and state aforesaid, and praying that examination be instituted and made into his physical and mental condition, according to law as in such cases made and provided:

You are therefore commanded forthwith to summon Dr. E. F. Bruce, Dr. W. C. Dewberry and J. N. Andrews as a committee of examination, and that within a reasonable time after the service of this summons they are required to secure the presence of G. C. Scudamore, the above alleged insane person, and make such thorough examination of him as will enable them to ascertain his mental and physical condition at the date of such examination, and if considered insane, whether the insanity is acute or chronic, its apparent cause, the particular hallucination, if any, the age, propensities of said alleged

insane person, and whether he is indigent or possessing sufficient available estate for his support.

Given under my hand and official seal at Pensacola, this 20th day of February, A. D. 1908.

HENRY BELLINGER, County Judge."

"In court of county judge in and for Escambia county, Florida.   To the judge of said court:

Your committee appointed to examine rnto the alleged insanity of G. C. Scudamore having performed the duty assigned to them, beg to submit the following report:

We have made such thorough examination as required by law and find the said G. C. Scudamore to be insane.   That his insanity is acute, the apparent cause being financial troubles, the particular hallucination being man of great wealth and extensive banking interest; age 32; that he does not require mechanical restraint to prevent him from self injury or violence to others, and that he does not possess sufficient available estate for his support.

W. C. DEWBERRY, M. D.

J. N. ANDREWS,
Committee.

"EXHIBIT D.

"Feb. 25th, 1908.
"In court of county judge in and for Escambia county, Florida.   To the judge of said court:

Your committee appointed to examine into the alleged insanity of G. C. Scudamore having performed the duty assigned to them, beg to submit the following report:

We have made such thorough examination as required by law and find the said G. C. Scudamore to be insane.   That his insanity is acute, the apparent cause

being financial troubles, the particular hallucination be-
ing man of great wealth and extensive banking interest;
age 32; that he does require mechanical restraint to pre-
vent him from self-injury or violence to others, and that
he does not possess sufficient available estate for his sup-
port.

E. F. BRUCE.

Committee.

"EXHIBIT D.

"Feb. 25th, 1908.

In court of county judge in and for Escambia county,
Florida.

STATE OF FLORIDA,
COUNTY OF ESCAMBIA.

In the name of the state of Florida. To the sheriff
of said county, greeting:

Whereas, on the 20th day of February, A. D. 1908,
this court, upon petition presented thereto, did appoint
E. F. Bruce, M. D., W. C. Dewberry, M. D. and J. N.
Andrews, a committee to inquire into the sanity or in-
sanity of G. C. Scudamore, a resident of the county
aforesaid; and whereas W. C. Dewberry and J. N. An-
drews of said committee has made its report to this
court to the effect that they find the said G. C. Scuda-
more to be insane; that his insanity is acute; the ap-
parent cause being financial troubles and the particular
hallucination being man of great wealth and extensive
banking interest; that he does not require mechanical
constraint to prevent the infliction of violence by him
upon himself or other persons; and that he does not
possess sufficient available estate for his support.

Whereas E. F. Bruce of said committee has made

its report to this court to the effect that they find the said G. C. Scudamore to be insane; that his insanity is acute; the apparent cause being financial troubles, and the particular hallucination being man of great wealth and extensive banking interest; that he does require mechanical constraint to prevent the infliction of violence by him upon himself or other persons; and that he does not possess sufficient available estate for his support.

It is therefore adjudged by the court that the said G. C. Scudamore is so insane.

You are therefore commanded forthwith to deliver the said G. C. Scudamore to the superintendent of the Florida Hospital for the Indigent Insane, for care, maintenance and treatment.

Given under my hand and seal this 26th day of February, A. D. 1908.

(Seal.)    HENRY BELLINGER, County Judge.

## "EXHIBIT E.

The petition for the writ contends, and in the briefs and argument here it was contended that the said proceedings and the said adjudication by the county judge's court that the said George C. Scudamore was insane, and the statutes of Florida under which said proceedings were had are void for the following reasons in substance:

(1)   Because the statutes, under which said proceedings were had, in conferring jurisdiction upon county judge's courts in such cases, violate Section 17 of Article 5 of the Florida Constitution.

(2)   Because said statutes attempting to authorize ocunty judges to commit insane persons to custody are unconstitutional and void in that they fail to provide for any notice to alleged lunatics of the proceedings to have them adjudged insane, thereby depriving them of liberty and property without due process of law, and being to

that extent in derogation of Section 1 of the 14th amendment of the Federal Constitution, and also of Section 12 of the Declaration of Rights of the Constitution of Florida.

(3)   Because said proceedings resulting in the said Scudamore being adjudged insane were void in that it appears from such proceedings that he was given no notice thereof, and was not accorded the right of trial by jury.

(4)   Because said statutes under which said proceedings were had are violative of Section 3 of the Declaration of Rights in the constitution of Florida, in that they do not provide for trial by jury.

(5)   Because said proceedings adjudging the said Scudamore to be insane are void for the reason that two of the persons who suggested to the county judge the institution of an inquiry into the sanity of said Scudamore, after filing such suggestion, withdrew or attempted to withdraw their names from such suggestion, leaving such suggestion or petition signed by a less number of persons than is required by the statutes in such cases.

Sections 1200, 1201 and 1202 of the General Statutes of Florida of 1906, and section 1203 of the same, as amended by Chapter 5706 Laws enacted in 1907, under which the proceedings in question were had, provide as follows:

"1200.   Petition.—When it is supposed that a person, resident of this state, is insane, either *non compos mentis* or sufficiently devoid of reason to be incapable of self control, a petition signed by five reputable citizens, not more than one of whom shall be a relative of the person, setting forth that he or she is to each of the petitioners personally known and that their knowledge of the mental condition of the subject is sufficient to justify the belief that he or she is insane, and asking that examination be instituted and made as provided by

law, may be presented to the county judge or judge of the circuit court having jurisdiction."

"1201.    Duty of judge.    Examining committee.— Any county judge or judge of the circuit court to whom, as provided in the preceding section, a petition is submitted, shall without unnecessary delay, appoint one intelligent citizen, who shall not have been a petitioner in the case, and two practicing physicians of good professional standing who shall be graduates of a school of medicine recognized by the American Medical Association, when such physicians reside in the county, who shall constitute an examining committee, and within a reasonable time after notice of their appointment shall secure the presence of the supposed insane person, and shall make such thorough examination as will enable them to ascertain his or her mental and physical condition at the date of the examination, and if considered insane, whether the insanity is acute or chronic, its apparent cause, the hallucination, if any, and the age and propensities of the subject; also whether indigent or possessing sufficient available means for his or her support; Provided, further, that if the person alleged to be insane shall at any time prior to the rendering of the decree in the case, apply to the court before which proceedings are had, by a petition for permission to contest the charge of insanity, the court on the presentation of the petition shall set the case on a day certain for hearing, and if the accused is indigent and unable to procure the attendance of witnesses in his or her behalf, the court shall have summoned a reasonable number of witnesses for such person, to be paid by the county."

"1202.    Report.—When examination of an alleged insane person has been made as provided in the preceding section, the examining committee shall report to the county judge or judge of the circuit court as the case may be, that fact, and shall communicate in their

report the information contemplated in said section, each of the three committeemen signing the report."

"Section 1203.   Sheriff to Deliver Custody.—On receiving the report of the examining committee, the county judge or the judge of the circuit court (as the case may be) shall examine the same; and if satisfied therefrom that the person examined and reported is insane within the meaning of this act, he, the said judge, shall so adjudge and decree, and shall make his order that the sheriff of the county from which the report is submitted shall at once deliver the person so adjudged to the superintendent of the Florida Hospital for the Indigent Insane, there to be received for care, maintenance and treatment as provided for in section one of this act; such order of commitment shall include copy of the information and report provided for in section one of this act; and same shall be transmitted by the sheriff to the superintendent of said hospital to be filed and held as his authority for detention of said insane person; Provided, when the proceedings reported by the said committee show the alleged insanity is chronic or produced by epilepsy or senility and that the person does not require confinement or mechanical restraint to prevent self injury or violence to others, but that he or she is indigent, the county judge or the judge of the circuit court (as the case may be in such event) shall adjudge and decree that the person is incurably insane, harmless and indigent, and shall make and issue his order that the sheriff shall deliver the person so adjudged to the county commissioners of the county where he or she resides, for care and maintenance as by law made and provided for paupers; provided, that if any responsible person offer to assume the care and custody of any such harmless person without cost to the state or county, the judge or court may in his or its discretion so order."

The first contention urged is that these provisions

of law, in conferring jurisdiction in such cases upon our county judges, are void because violative of section 17 of article 5 of our state constitution. This section of our organic law provides as follows: "The county judge shall have original jurisdiction in all cases at law in which the demand or value of property involved shall not exceed one hundred dollars; of proceedings relating to the forcible entry or unlawful detention of lands and tenements; and of such criminal cases as the legislature may provide. The county judge shall have jurisdiction of the settlement of the estates of decedents and minors, to order the sale of real estate of decedents and minors, to take probate of wills, to grant letters testamentary and of administration and guardianship, and to discharge the duties usually pertaining to court of probate. He shall have the power of a committing magistrate and shall issue all licenses required by law to be issued in the county."

We do not think that the questioned legislation violates this provision of our organic law. It expressly gives to the county judges jurisdiction to grant guardianships, and in effect the commitment of insane persons to an asylum for treatment, care and control, or to the custody of some private individual for the same purpose, is nothing more than the placing of such unfortunates under guardianship. Besides this the conferring by said section upon such county judges of the duties "usually pertaining to courts of probate" makes the questioned legislation proper. By the provisions of section 8 of the early act of February 17th, 1833, the judges of the county courts, then corresponding in their general jurisdiction in the main with the present county judges, among their general probate powers and duties, were expressly authorized to appoint guardians for persons *non compos mentis*. And such power was subsequently recognized by the act of July 25th, 1845, as

being one of the powers usually and theretofore exercised by courts of ordinary or probate.   See section 3, p. 58 Thompson's Digest Laws of Florida, and note *"E"* at foot of page 195 of the same digest.   And when this section of our present constitution in general terms cast upon county judges the duties and jurisdiction *"usually pertaining to courts of probate,"* it referred more especially to the duties that theretofore usually appertained to such probate courts here, in Florida.   And from the early legislation cited we find that at the time (1885) of the adoption of our present constitution, it had been recognized here for more than a half century that one of the powers usually exercised by probate courts was to commit lunatics to guardianship.   Monastes v. Catlin, 6 Oregon 119.

Again it is contended that the questioned legislation, in its failure to provide a jury trial of the question of the subject's sanity, violates section 3 of the declaration of rights in our organic law, which is in the words following:

"The right of trial by jury shall be secured to all, and remain inviolate forever."

This contention cannot be sustained.   In the case of Hunt v. City of Jacksonville, 34 Fla. 504, 16 South. Rep. 398, it was held that this provision of our constitution was not designed to *extend the right* of jury trial, but merely se*cured* it in those cases *in which it was matter of right before the adoption of the constitution.* At the time in 1885, when this provision was reinserted as part of our constitution, for a period of more than half a century, and long prior to the adoption of our first state constitution in 1845 containing the same provision, the law in force here making provision for the ascertainment of the fact of insanity and for commitment of the unfortunate sufferer therefrom, made no provision for a jury trial of such question, and granted

no such right to the subject involved in the inquiry. Consequently the questioned legislation, enacted since the adoption of our constitution, in withholding a trial by jury in such cases, invades no right secured to the subject by such provision of the organic law. Gaston v. Babcock, 6 Wis. 503; Camp Phosphate Co. v. Anderson, 48 Fla. 226, text p. 246; 37 South. Rep. 722, 729.

It is again contended that the questioned legislation is void because it violates both section 1 of article 14 of the Federal constitution and section 12 of the declaration of rights in our state constitution, in that it deprives the citizen of his liberty and property without due process of law. That for its failure to provide any notice to the alleged lunatic of the proceedings provided to determine as to his sanity, it deprives him of his liberty and property without due process of law. This contention cannot be sustained. The quoted section 1201 of our general statutes, under which the proceedings were had in this case, expressly provides that the examining committee "shall secure the *presence* of the supposed insane person, and shall make such thorough examination as will enable them to ascertain his or her mental and physical condition at the date of the examination." And the same section provides further for a contest by the subject of the question of his insanity, and for the procurement of witnesses on his behalf upon such question. These provisions, we think, furnish to the subject ample notice and opportunity to be heard, and furnish that "due process of law" contemplated by our own and the Federal constitution.

In the case of Chavannes v. Priestley, 80 Iowa 316, 45 N. W. Rep. 766, it is said: "If the commissioners' warrant should issue, and the party is brought before the board, there would be both notice and presence, and the law seems to contemplate such presence."

That statutes requiring the *personal presence* of the

subject of inquiry in such cases provide sufficient notice, see State *ex rel.* Wilhelm v. Third Judicial District Court, 17 Mont. 411, 43 Pac. Rep. 385; State *ex rel.* Kelly v. Kilbourne, 68 Minn. 320, 71 N. W. Rep. 396; In the Matter of William Ross, 38 La. Ann. 523; Chase v. Hathaway, 14 Mass. 221; Nyce v. Hamilton, 90 Ind. 417; Lackey v. Lackey, 8 B. Mon. (Ky.) 107; People *ex rel.* Ordway v. St. Saviour's Sanitarium, 56 N. Y. Supp. 431, 34 App. Div. 363; In re Wellman, 3 Kan. Ct. App. 100, 45 Pac. Rep. 726; Stewart v. Taylor, 111 Ky. 247, 63 S. W. Rep. 783; In re Gannon, 5 L. R. A. 359; Dutcher v. Hill, 29 Mo. 271, S. C. 77 Am. Dec. 572, and note; Matter of Blewitt, 131 N. Y. 541, 30 N. E. Rep 587; Lance v. McCoy, 34 W. Va. 416, 12 S. E. Rep. 728. Besides the quoted provisions of the statute requiring the personal presence of the alleged lunatic, and entitling him to contest the proceding, sections 1962, 1963, 1964 and 1965 of the general statutes of Florida of 1906, make ample provision for any relative or friend of anyone who has been adjudged insane by bill in equity, at any time, to have his sanity inquired into by the Chancellor, and upon such inquiry if found to be sane provides fully for his immediate release, with ample provision for restoration to him of his estate if any.

In the case of Dowdwell Petitioner, 69 Mass. 387, 47 N. E. Rep. 1033, it is held that the right to institute judicial proceedings under the statute is a sufficient protection of the liberty of the subject to meet these constitutional requirements even though no sort of notice to the lunatic was given in the initial proceeding by which he was so adjudged. But, it is contended, although our statute requires the personal presence of the subject of inquiry before the committee of examiners, and requires such committee to make a thorough examination of his mental and physical condition, yet it falls short of the constitutional requirements because it fails to *require*

such committee to inform or notify the subject of the purpose and object of their proceedings, and that it is possible under the statute for such committee to make such examination without the subject of it being at all aware of their purpose. Our answer to this is that such might be the case—but if it were it would be very fair evidence of the truth of the alleged insanity. That a committee of three persons, possibly strangers to the subject of inquiry, could have a sane person brought in person before them, and make of him such thorough mental and physical examination as this statute requires without his being aware of their purpose, is hardly conceivable. Such committee is a *quasi* official body and the presumptions are that they perform their duty properly, without any effort wrongfully to conceal their purpose from the subject of their inquiry.

It is again contended that even if these statutes are valid, yet the petitioner did not in fact have any notice of the proceedings. It must be remembered that this inquiry on *habeas corpus* is a collateral attack upon the proceedings by which the petitioner was adjudged to be a lunatic, and that the want of notice as a matter of fact cannot be enquired into in a collateral proceeding, but that therein all presumptions must be indulged in favor of the regularity of the proceedings of a court of competent jurisdiction. But without this we think that the proceedings here show that the petitioner and his counsel did have sufficient notice of the proceedings to bind him. It appears here that the attorneys for the petitioner appeared before the county judge on his behalf before the rendition of the order of commitment. Martin v. Motsinger, 130 Ind. 555, 30 N. E. Rep. 523.

It follows from what has been said that the said George C. Scudamore must be remanded to the custody of the sheriff of Escambia county to be by him conveyed to the state asylum for the insane and there to be deliv-

ered to the superintendent of such asylum in conformity to the order or decree of the county judge of Escambia county, and it is hereby so ordered. The cost of this proceeding to be taxed against the petitioner Charles C. Scudamore as next friend of the said George C. Scudamore.

All concur.