J. B. GREEN REALTY CO., INC., J. B. GREEN, v. FLORIDA REAL ESTATE COMMISSION, *ex rel.* T. P. WARLOW, JR.

177 So. 535.

Division B.

Opinion Filed November 4, 1937.

*L. P. Hardee* and *Raney H. Martin,* for Appellants;
*W. H. Poe* and *L. E. Broome,* for Appellees.

CHAPMAN, J.—On the 29th day of January, 1936, there was filed before the Florida Real Estate Commission an information by T. P. Warlow, Jr., a resident of Florida, and alleged the following facts to be true: That J. B. Green Realty Co., Inc., is a registered real estate broker under Chapter 12223, Laws of Florida, 1927, and gave its residence as at 651 Central Avenue, St. Petersburg, Florida; that J. B. Green is the managing officer of the J. B. Green Realty Company, Inc., and that the registration as a real estate broker should be revoked for the reason, viz.: during the summer of 1934 J. B. Green Realty Co., Inc., entered into a joint adventure with Philip H. Reed, Sr., a real estate broker of Chicago, Illinois, for the purpose of selling a hotel located at Daytona Beach, Florida, and a listing thereof by J. B. Green Realty Company, Inc., had been obtained through John Pierce of Daytona Beach, Florida, likewise a real estate broker, and an agreement was made with P. H. Reed to obtain a purchaser of the Daytona Beach Hotel for the sum of $60,000.00 and one willing and financially able to buy, and a commission of 5% or $3,000.00 would be divided three ways (a) $1,000.00 to John Pierce; (b) $1,000.00 to Philip H. Reed, and (c) $1,000.00 to J. B. Green Realty Company, Inc. Philip H. Reed, pursuant

to said agreement, obtained a purchaser for the hotel and the trade therefore closed at Daytona Beach, Florida, on January 5, 1935, when the $3,000.00 commission was paid by the owner thereof to John Pierce for said sale according to the listing agreement, and $1,000.00 thereof was kept by John Pierce and the remaining $2,000.00 was by John Pierce paid to J. B. Green Realty Company, Inc., who in turn refused or otherwise failed to deliver to Philip H. Reed the said $1,000.00 according to the agreement among the three realtors. The information seeks a revocation or suspension of the registration as a real estate broker on the part of J. B. Green Realty Company, Inc., and J. B. Green, its president and managing officer.

The defendant answered the information and admitted its registration as a real estate broker with his place of business at 651 Central Avenue at St. Petersburg, Florida; that the J. B. Green Realty Company, Inc., maintained a department for leasing and sale of hotels in Florida; that an agreement was reached with Philip H. Reed, of Chicago, Illinois, likewise specializing in the leasing and sale of hotels, and was to carry listing sent him by J. B. Green Realty Company, Inc., but the Daytona Beach Hotel sale and commission therefor was to be divided three ways as above stated. It denied Philip H. Reed obtained a purchaser willing and able to buy the property for the sum of $60,-000.00. It admitted the sale and the receipt of $2,000.00 received of John Pierce as part of the commission on the sale, but denied that Philip H. Reed was entitled to the said $2,000.00 or any part thereof. Admitted numerous demands for the $1,000.00 by Reed, and denies any fraud or dishonest conduct in or about the transaction.

An examiner was appointed by H. W. Barr, Chairman, on February 19, 1936, and evidence of the parties on the

aforesaid issues taken at St. Petersburg, Florida, on March 13, 1936, when the respective parties were represented by counsel.

The plaintiff below adduced N. C. Bryant, who was a real estate broker, and was acquainted with Green and Reed and listed the Daytona Beach Hotel property with Green, obtaining his listing from John Pierce at Daytona Beach, Florida. Philip H. Reed was sworn and identified letters, telegrams and correspondence by him had with Green about the Daytona Beach Hotel property. These letters and telegrams were admitted in evidence and marked as plaintiffs' exhibits ranging from 1 to 62. In Exhibit number 5 J. B. Green Realty Company, Inc., wrote P. H. Reed & Co., Chicago, Ill., under date of September 6, 1936, when it was stated: "All commissions, should be decided to cooperate, will be divided on a 50-50 basis between your company and ours." In response P. H. Reed & Co., under date of September 22, 1933, wrote: "We enclose one of our listing forms * * * which we would like to have on any hotel you list." On December 20, 1934, J. B. Green Realty Company, Inc., wrote P. H. Reed & Co., and said: "The commission on this particular sale is five per cent. divided three ways as per our arrangement. The purchase price is $60,000.00." On January 26, 1935, Green wrote Reed: "Called Johnny Pierce at Daytona Beach and he has not yet got a settlement * * * but expects it soon," and the evidence clearly shows that J. B. Green Realty Company, Inc., had not only received the $2,000.00 several days prior thereto, but had divided the amount with the employees of the office. After P. H. Reed & Co. had made known to J. B. Green Realty Company, Inc., that the sale of the Daytona Beach Hotel had not only been closed, but the $3,000.00 as a commission divided $1,000.00 to John Pierce and $2,000.00 to J. B.

Green Realty Co., Inc., some plan or scheme was developed or created for the retention of the $2,000.00 on the part of J. B. Green Realty Company, Inc.: (a) P. H. Reed & Co. did not produce the purchaser; (b) the actual purchaser was at the time a client of J. B. Green Realty Company, Inc.; (c) expenses of sale should be deducted before division; (e) an offer of $600.00 to P. H. Reed & Co. as settlement in full; (f) in fairness and right no division of the commission should be made. These various reasons developed only after closing of the sale and receipt of commission by Green Company. While the original agreement called for a 50-50 division basis of commission between J. B. Green Realty Company, Inc., and P. H. Reed & Co., it was altered or changed by agreement not to apply to the Daytona Beach Hotel property, but the agreement as (a) $1,000.00 to John Pierce; (b) $1,000.00 to J. B. Green Realty Company, Inc.; (c) $1,000.00 to P. H. Reed Co. Counsel of record for the parties had or made a stipulation to be considered by the Court.

The defendant gave evidence in his own behalf admitting the correspondence offered in evidence between it and P. H. Reed Co. The closing of the deal was admitted along with the receipt of the $2,000.00 of John Pierce and a division of the money among the employees of his office. W. J. Zbindin and L. E. Hoeye worked as employees in the office of J. B. Green Realty Company, Inc., and corroborated the evidence of J. B. Green. It developed that J. B. Green took over personally the management of the hotel department of his realty office prior to the closing of the deal on the hotel property at Daytona Beach. Two reputable realtors of St. Petersburg gave evidence as to the good reputation of J. B. Green Realty Company, Inc., as to honest and ethical dealings.

The evidence taken before the examiner was attached to the petition addressed to the Chancellor of the Circuit Court for Pinellas County and signed by the Florida Real Estate Commission reciting that the facts warranted the Commission in submitting the cause to the court with the request to take such further proceedings therein as may be provided by law.

The Court in considering the record on November 2, 1935, made and entered an order suspending the registration of J. B. Green and J. B. Green Realty Company, Inc., for a period of four months, effective November 2, 1936, and further restrained the defendants from operating as real estate brokers or salesmen in the State of Florida during the four months suspension period. A n appeal was taken from said order or decree and the cause is here for review on seven assignments of error predicated largely on facts supporting the decree.

This proceeding, is brought under Chapters 10233 and 11336, Laws of Florida, 1925, and Chapter 12223, Laws of Florida, 1927. These Acts have been construed in the case of Prettyman v. Florida Real Estate Commission, 92 Fla. 515, 109 Sou. Rep. 442, and Chapter 12223, Laws of Florida, 1927, is construed in the case of State, *ex rel*. Davis, v. Rose, 97 Fla. 710, 122 Sou. Rep. 225. See: Florida Real Estate Commission, *ex rel*. Holly Hill G. & F. Co., v. Crisp, 111 Fla. 600, 149 Sou. Rep. 543. The proceeding in this cause was filed under Chapter 12223, Laws of 1927. One of the contentions made by appellant is that he has been deprived of a trial by jury as provided by the Constitution of Florida and the Declaration of Rights, Section 3. "The right of trial by jury shall be secured to all and remain inviolate forever." The appellant argues that the statute under which the information was filed is in violation of

Section 3, *supra,* Declaration of Rights. It will be observed that Chapter 12223 was enacted by the 1927 session of the Florida Legislature and the subject matter thereof was not regulated or controlled by the common law. This Court, in the case of Hunt v. City of Jacksonville, 34 Fla. 504, text p. 506, 16 Sou. Rep. 398, 43 Am. St. Rep. 214, in passing upon Section 3, Declaration of Rights, *supra,* said:

"In support of the application for the writ the only contention of counsel for the petitioner is, that under our Constitution—that provides (Section 3, Declaration of Rights) that the right of trial by jury shall be secure to all, and remain inviolate forever,' the municipal court had no jurisdiction to try and punish him for the offense charged, because it could not try by jury, and that the defendant was entitled to a jury trial. That the offense charged, though disguised in the city ordinances as being simply a breach of the peace of the city, was in reality the crime of assault and battery, made an indictable misdemeanor by the State law, and that upon a trial therefor he was entitled to a jury. That because he was not tried by jury the whole proceeding is void and should be quashed. In the case of Theisen v. McDavid, City Marshal, decided at the present term, we have held that it is no objection to a municipal ordinance creating an offense against the city government and prescribing penalties therefor, that the trial thereunder is without a jury. This we think is well settled by the great weight of the authorities. The penalties permitted by legislative authority to be inflicted by municipalities for infractions of their ordinances are usually limited within narrow bounds, so that they are generally trivial in character; and the reason advanced as to why the trials under such ordinances can be conducted without a jury, and without violating the constitutional guaranty is, that the constitutional provision does

not *extend the right,* but merely secures it in cases *in which* it was a matter of right before the adoption of the Constitution. Such trials were conducted generally without juries prior to the adoption of our Constitution, and, consequently, do not fall within the constitutional guaranty."

Likewise in the case of *Ex Parte* Scudamore, 55 Fla. 211, text pages 225-226, 46 Sou. Rep. 279, in construing Section 3 of the Declaration of Rights, viz.: "The right of trial by jury shall be secured to all, and remain inviolate forever," amongst other things, said:

"Again it is contended that the questioned legislation, in its failure to provide a jury trial of the question of the subject's sanity, violates Section 3 of the Declaration of Rights in our organic law, which is in the following words:

" 'The right of trial by jury shall be secured to all, and remain inviolate forever.'

"This contention cannot be sustained. In the case of Hunt v. City of Jacksonville, 34 Fla. 504, 16 South. Rep. 398, it was held that this provision of our Constitution was not designed to *extend the right* of jury trial, but merely *secured* it in those cases *in which it was a matter of right before the adoption of the Constitution.* At the time in 1885, when this provision was reinserted as part of our Constitution, for a period of more than half a century, and long prior to the adoption of our first State Constitution in 1845 containing the same provision, the law in force here making provision for the ascertainment of the fact of insanity and for commitment of the unfortunate sufferer therefrom, made no provision for a jury trial of such question, and granted no such right to the subject involved in the inquiry. Consequently the questioned legislation, enacted since the adoption of our Constitution, in withholding a trial by jury in such cases, invades no right secured to

the subject by such provision of the organic law. Gaxton v. Babcock, 6 Wis. 503; Camp Phosphate Co. v. Anderson, 48 Fla. 226, text p. 246; 37 South. Rep. 722, 729."

The subject matter is controlled by Chapter 12223, Acts of 1927 Legislature. Not having been controlled by the common law, the provision for the trial thereof before a chancery court cannot and does not violate Section 3 of the Declaration of Rights.

It is argued by counsel that the relationship existing between J. B. Green and J. B. Green Realty Company, Inc., that the decree should affect only J. B. Green Realty Company, Inc., and not J. B. Green. The evidence is clear that J. B. Green took over and assumed the management of the Hotel Department of the J. B. Green Realty Company, Inc., and had considerable correspondence with P. H. Reed & Co. prior to the closing of the deal on January 5, 1935. J. B. Green is the *alter ego* for J. B. Green Realty Company, Inc., and there was no error in the findings of the Chancellor as to J. B. Green and J. B. Green Realty Company, Inc.

We have considered the other assignments in connection with the record and fail to find error on the part of the lower court in entering the decree appealed from. See: Farrington v. Harrison, 95 Fla. 769, 116 Sou. Rep. 497. The decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.