### UNITED STATES of America
### v.
### Clifton Orneal DANIELS, Ronald Del Raine, and Henry Michael Gargano.
### No. 67 Cr. 611.

United States District Court
N. D. Illinois, E. D.
April 2, 1968.

Terence F. MacCarthy and Thomas D. Decker, Chicago, Ill., for defendant Clifton Orneal Daniels.

Charles A. Bellows, Joseph A. Ettinger, Chicago, Ill., for defendant Ronald Del Raine.

Edward J. Calihan, Jr., Ronald P. Alwin, Chicago, Ill., for defendant Henry Michael Gargano.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for the United States.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO WAIVE TRIAL BY JURY

ROBSON, District Judge.

The defendants have moved this court to waive a trial by jury. They allege that because of the massive pre-trial publicity, a fair and impartial jury could not be selected in this district. The court concludes that this motion should be denied for the reasons set out below.

Rule 23 of the Federal Rules of Criminal Procedure requires the consent of the government and the approval of the court before a defendant can waive a trial by jury. The government has stated that it will not consent to such a

waiver. The question thus resolves itself to whether the publicity carried so much prejudice as to make it incumbent on this court to grant defendants' motion, on the ground that only in this manner can the defendants' rights to a fair and impartial trial be preserved.

This court has studied defendants' briefs and exhibits. There is no question that at the time the crime was committed, the news media covered the story massively. Since the defendants' arraignments, however, there has been *comparatively* little publicity. There has been, as is the case with any crime with elements of violence, coverage in the so-called "pulp" magazines. See Defendants' Exhibits 6, 7 and 8; and Corbett v. Patterson, 272 F.Supp. 602 (D. Colo.1967). In the media of more general circulation, such as newspapers, television, radio, etc., the publicity since arraignment has been minimal.* Most of the publicity occurred between October 27 and November 5, 1967, with only four small items appearing after November 13, 1967. See Defendants' Exhibits 170, 172, 174 and 182. The news media are to be commended for their restraint after this period.

■ The defendants urge that the people of this district have been "saturated" with the details of the crime and, therefore, could not give the defendants a fair and impartial trial by jury. It is clear to this court that although there may be circumstances where a waiver of this type should be allowed even over the objection of the government, this case does not present such a situation. Cf. dicta in Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), and United States v. Kramer, 355 F.2d 891 (7th Cir. 1966). In *Singer*, as the defendants candidly admit, the court made it clear that there is no unqualified right to waive a trial by jury. The government's consent was necessary, but, the court continued, this consent should not be withheld "for an ignoble purpose." Singer v. United States, supra, 380 U.S. at 37, 85 S.Ct. 783. There is no suggestion here that the government has such an "ignoble purpose" in opposing this motion. Also see United States v. Igoe, 331 F.2d 766 (7th Cir. 1964).

Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), offers this court many guidelines in handling cases where a question of prejudicial pre-trial publicity has been raised. The facts of *Sheppard*, however, show that Sam Sheppard was exposed to publicity far in excess to that which the defendants here have experienced. Sam Sheppard was shown on television while he was being interrogated; he was the subject of many unfounded rumors which were given banner headlines in the daily press from the time of the crime to the end of the trial; and his trial degenerated into a public spectacle because the press almost completely controlled the courtroom. The court there indicated that the judge could have done several things to reduce the effect of the pre-trial publicity.

■ The use of the continuance was one method suggested. It is this court's opinion that a continuance is called for by the facts in this case. The crime in the instant case occurred on or about October 27, 1967. The defendants were all arraigned by the middle of December, 1967. The massive publicity ended (in the major news media) some time in mid-November. It is this court's belief that there is the possibility that a fair and impartial jury might be chosen in this district even now. Beck v. Washington, 369 U.S. 541, 555–558, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). Reinforcing this court's belief is its ability to use the voir dire examination of prospective jurors to eliminate the possibilities of prejudice. As Judge Edward Weinfeld said in denying a continuance, United States v. Kahaner, 204 F.Supp. 921, 924 (S.D.N.Y.1962):

" * * * Serious accusations * * are bound to receive wide publicity

---

* For a more detailed discussion, see the Government's brief at pp. 2–6.

through all avenues of modern communication; the public interest will be more than casual and it would be rare to find persons qualified to serve as jurors who have not heard or read of such matters. These are facts that cannot be downed. On the other hand, it is also a fact that frequently in this large metropolitan district prospective jurors show little recall of past widely publicized matters; fears that jurors have formed opinions often prove groundless; the impact of news items upon the public mind, depending upon their nature, may be more imaginary than real. Further, *impressions or even an opinion do not necessarily establish partiality or prejudice. * * * Whether or not the publicity has been of such a nature that the selection of a fair and impartial jury is foreclosed at this time cannot be determined until jurors are questioned on the voir dire.*" (Emphasis added.)

To the same effect, see Beck v. Washington, supra, 369 U.S. at 557, 82 S.Ct. 955. However, even given this belief that a fair trial might be had now, this court, in the exercise of an abundance of caution, does not intend to proceed with the trial of this case until September, 1968, ten months after the massive publicity will have ended.

As to the necessity for controls on publicity during trial, this court's order of February 6, 1968, need only be quoted in part:

"Several recent Supreme Court decisions have dealt with the question of what constitutes prejudicial publicity at a public trial. Irwin v. Dowd, 366 U.S. 717 [81 S.Ct. 1639, 6 L.Ed. 2d 751] (1961); Rideau v. Louisiana, 373 U.S. 723 [83 S.Ct. 1417, 10 L.Ed. 2d 663] (1963); Sheppard v. Maxwell, 384 U.S. 333 [86 S.Ct. 1507] (1966). This court agrees with several of the assumptions which run through these decisions. The courtroom and courthouse premises are subject to the control of the court. The presence of the press must be limited when it is apparent that the accused

might otherwise be prejudiced." (At 23.)

The defendants cite these same decisions in their brief. This court is of the opinion that there is nothing in those cases to cause this court to change its attitude toward the present motion. Also see the discussion at pages 6 to 9 of the Government's brief.

The court therefore denies the defendants' motion to waive a trial by jury. It is so ordered.