STATE ex rel. Jeremiah W. NIXON,
Attorney General, Relator,

v.

The Honorable Kenton G. ASKREN,
Respondent.

No. WD 57853.

Missouri Court of Appeals,
Western District.

Sept. 26, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Asst. Atty. Gen., Jefferson City, for appellant.

Kirk S. Zwink, Kansas City, for respondent.

Before JAMES M. SMART, Jr., P.J., VICTOR HOWARD and THOMAS H. NEWTON, JJ.

JAMES M. SMART, Jr., Judge.

The Attorney General of Missouri seeks a ruling prohibiting the respondent, a judge of the Circuit Court of Cooper County, from enforcing a ruling denying to the state the statutorily created right to a jury trial on the state's petition seeking a determination that Kenneth Acosta is a "sexually violent predator" under §§ 632.480–.513, RSMo Cum.Supp.1999.[1] The state contends that the trial court is exceeding its jurisdiction because it has no authority to deny the state's demand for a jury trial. We issued a preliminary order in prohibition January 3, 2000. Now, after further briefing and argument, we make our preliminary order absolute.

### Prohibition

Our jurisdiction in this original writ proceeding is derived from Mo. Const., Art. V, § 4. Because this case is an original remedial writ, we have jurisdiction even though resolution of the writ application requires determination of the validity of a state statute. *State ex rel. Jordon v. Mehan,* 597 S.W.2d 724, 726 (Mo.App.1980).

■ A writ of prohibition will issue: (1) to avoid a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction; (2) to remedy a clear excess of jurisdiction or an abuse of discretion such that the lower court lacks the power to act as contemplated; and (3) in limited situations where some "absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order." *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994). In the case at hand, the state contends that the circuit court wholly lacked jurisdiction to enter its order denying the state the right to a jury trial which is clearly specified by statute.

### Factual Background

On May 3, 1999, the Attorney General filed an action in Cooper County to declare

1. All citations are to Revised Statutes of Missouri, Cumulative Supp.1999 unless otherwise indicated.

Kenneth Acosta a sexually violent predator. The state alleged that Acosta, who had been convicted in Cooper County of forcible rape and was serving his sentence in the Department of Corrections, has a history of activities which demonstrate that he has "mental abnormalities, major depression and sexual sadism which make him more likely than not to engage in predatory acts of sexual violence if released." The state alleged that an assessment conducted by a multidisciplinary team pursuant to § 632.483.4, concluded that Acosta appears to meet the definition of a sexually violent predator. The reports attached to the petition indicate that Acosta also has a prior history of sexual offenses.

The trial court held a probable cause hearing and found probable cause to believe that Acosta is a "sexually violent predator" within the meaning of § 632.480(5). The court ordered an evaluation of Acosta by an additional psychiatrist or a psychologist and directed the matter be tried following completion of the evaluation.

Pursuant to § 632.492, which provides that either party or the judge shall have the right to demand that the trial be before a jury, the state demanded trial by jury. Acosta objected, and moved for an order rejecting the state's demand on constitutional grounds of due process and equal protection. The trial court agreed that allowing the state to have a jury trial over the objection of Acosta would be a violation of Acosta's rights. The court also concluded, raising the issue *sua sponte*, that the jury trial provision violates the "Hancock Amendment", Mo. Const., Art. X, §§ 16–24, in that "state action is compelled upon the county without requisite reimbursement for the cost involved for a jury trial." The state contends that the court erred in this determination and is exceeding its jurisdiction in clear violation of its duty under the statute.

## The Sexually Violent Predator Act

Missouri's Sexually Violent Predator Act became effective January 1, 1999. The Act, set out at §§ 632.480–.513, RSMo Cum.Supp.1999 (hereafter "the Act" or "SVPA"), revised Missouri's sex offender registration statute and provided a procedure for the civil commitment of individuals determined to be "sexually violent predators." Section 632.483.1(1) provides that when a person convicted of a sexually violent offense is scheduled for release from the Department of Corrections, the Department must notify the attorney general if it appears that such person "may meet the criteria of a sexually violent predator." After evaluation by a multidisciplinary team, and a determination "that the person meets the definition of a sexually violent predator," the Attorney General may file a petition in the probate division of the circuit court in which the person was convicted seeking a determination that the person is a "sexually violent predator." Section 632.486.

Pursuant to § 632.489.1, the court shall conduct a probable cause hearing to "determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." The Act provides that the detainee may appear in person and be represented by counsel at the hearing. Section 632.489.3. If the court determines that there exists probable cause to believe that the detainee is a sexually violent predator, the court directs the Director of the Department of Mental Health to have the person examined "by a psychiatrist or a psychologist as defined in § 632.005 who was not a member of the multidisciplinary team...." Section 632.489.4. The detainee may also be examined by a "consenting psychiatrist or psychologist of the person's choice, at the person's own expense." *Id.*

As to the matter of a jury trial, § 632.492 provides that either the detainee, or the state, or the judge shall have the right to "demand that the trial be before a jury." That section says that if no demand

for a jury trial is made, the trial "shall be before the court." Section 632.492. After the presentation of the evidence, "the court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Section 632.495. If the person is found to be a sexually violent predator, the person shall be committed to the custody of the Director of the Department of Mental Health for "control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large." *Id.* If the court or jury does not determine beyond a reasonable doubt that the person is a sexually violent predator, "the court shall direct the person's release." *Id.*

Missouri's SVPA was patterned very closely after a Kansas statute which in 1997 was upheld in the United States Supreme Court against constitutional attack. *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In *Hendricks,* the law provided proceedings for the involuntary commitment of "sexually violent predators who have a mental abnormality or personality disorder and who are likely to engage in repeat acts of sexual violence if not treated for their mental abnormality or personality disorder." Kan. Stat. Ann. § 59–29a01 *et seq.* (1994). The United States Supreme Court upheld the Kansas law, finding that the terms of the Kansas statute satisfied substantive due process requirements. The court said that there are "narrow circumstances" in which a state may provide for forcible civil detainment of individuals who cannot control their behavior and pose a danger to public health and safety. *Hendricks,* 521 U.S. at 356–57, 117 S.Ct. 2072.

## Due Process

The Kansas statute upon which Missouri's SVPA was modeled included the same jury demand provision as set forth in the Missouri SVPA. However, the court in *Hendricks* did not address the arguments raised herein concerning the jury demand because Leroy Hendricks, an admitted pedophile, did not object to allowing a jury to decide the issues. In this case, Acosta objected to granting a jury trial to the state. The state argues that the circuit court had no right or authority to deny a jury trial to the state on the question of whether Acosta is a sexually violent predator. The state maintains that there is no such a thing as a fundamental right to a bench trial in either a criminal case or a civil commitment. The state argues that the General Assembly had legitimate reasons for granting to the attorney general the same right Acosta has—the right to a jury trial. The state argues that the trial court completely lacked authority for its ruling.

The United States Supreme Court has addressed the issue of whether a criminal defendant has a fundamental right to elect not to be tried by jury. In *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the defendant challenged Rule 23(a) of the Federal Rules of Criminal Procedure. Rule 23(a) allows a defendant who wishes to waive a jury trial to do so if the defendant has the consent of the court *and the government.* Singer's argument was that a defendant in a criminal case had a right not only to a trial by jury, as provided by the United States Constitution, but also a corresponding right to have his case determined by a judge alone. *Id.* at 25–26, 85 S.Ct. 783. The court rejected this argument. After examining the right to trial by jury and its history, the court held that, even though a defendant may waive the right to a jury trial under *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930),[2] there is no "constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney

---

**2.** Prior to *Patton,* waiver of jury trial was deemed unconstitutional in felony cases. *Pat-* *ton,* 281 U.S. at 308–10, 50 S.Ct. 253.

and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury – the very thing the Constitution guarantees him." *Singer*, 380 U.S. at 35–36, 85 S.Ct. 783. The court also stated that the constitution "recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result." *Id.* at 36, 85 S.Ct. 783.

Missouri's criminal procedure does not allow the prosecution to object to a bench trial in criminal cases, but the defendant's choice to waive a jury requires the agreement of the court. Mo. Const., Art. I, § 22(a) states:

That the right of trial by jury as heretofore enjoyed shall remain inviolate; ... and that in every criminal case any defendant may, *with the assent of the court*, waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury. (emphasis added).

■ The Missouri Supreme Court also held in *State v. Taylor*, 391 S.W.2d 835, 837 (Mo.1965), that a defendant had no absolute right to a bench trial even though the defendant articulated fears that racial considerations may enter into a jury's determination. The court stated that an accused "has no absolute right, either by constitution, statute, or court rule, to elect that he shall be tried by the court without a jury." *Id.* at 836. *See also State v. Goree*, 762 S.W.2d 20, 21–22 (Mo. banc 1988) (trial court denied waiver of jury trial because judge reluctant to

hear case without a jury); *State v. Johnson*, 530 S.W.2d 690 (Mo. banc 1975) (after jury was selected and before trial began, defendant wanted to waive jury and court refused to allow waiver). *See also* Debra T. Landis, Annotation, *Right of Accused, in State Criminal Trial, to Insist, over Prosecutor's or Court's Objection, on Trial by Court Without Jury*, 37 A.L.R.4th 304, § 3 (2000). We fail to find any authority for the proposition that an accused has a fundamental right to waive a jury in criminal cases.[3]

■ The next question is whether Missouri has recognized a due process right to a bench trial in civil commitment cases. In civil cases generally, neither side has a right to a bench trial over the objection of the other party (except for cases which, by their nature, are limited to bench trials). Art. I, Section 22(a) of the Missouri Constitution allows a criminal defendant, with the assent of the court, to waive a jury trial. That section, however, does not allow a party in a civil suit to waive a jury over the objection of the adverse party. Therefore, the SVPA is consistent with the law applicable to civil cases generally.

Acosta cites *In re Link*, 713 S.W.2d 487 (Mo. banc 1986) for the proposition that the right to waive a jury trial is a fundamental part of due process. In *Link*, petitions for guardianship were filed seeking the appointment of a guardian for Mildred Link, an elderly woman who seemed to be losing her ability to attend to her financial affairs. *Id.* at 490. Following a hearing before the court, the court found Ms. Link incapacitated and appointed a guardian and conservator. *Id.* at 491. Ms. Link appealed, contending *inter alia*, that

---

**3.** Acosta also suggests that because the focus in SVPA cases is on the defendant's alleged propensities rather than on any specific prior act, almost every aspect of his character and life history will be considered relevant, enhancing the likelihood that the jury will disdain and abhor the defendant to his prejudice. It is true that the scope of logical relevance will be relatively broad in an SVPA case. We find no authority for the proposition that the broad scope of the inquiry presents a due process issue in itself, as long as the traditional rules of logical and legal relevance are applied appropriately in the trial of the matter.

§ 475.075.8(2) authorizes trial only by jury in all competency proceedings, and that the court erred in allowing the case to be tried to the court. *Id.* The court did not agree that a jury trial was mandatory, and held that the statute provided that the alleged incompetent could waive a jury trial. *Id.* at 495. The court decided, however, that the legislature intended in 475.075 that if a jury is to be waived by the alleged incompetent, that waiver should be affirmatively shown on the record in the fashion of such waivers in criminal cases under Criminal Rule 27.01. *Id.*

In discussing the intention behind the jury trial provision of § 475.075.8, the court noted that prior to 1983, the case was tried to the judge when neither the petitioner or the alleged incompetent demanded a jury. *Id.* at 492. After the 1983 amendment, the right to a jury was granted only to the alleged incompetent. *Id.* at 494. The court held that the legislature thus intended to leave the option with the alleged incompetent. *Id.* To construe the statute as mandating a jury trial would be to deprive an alleged incompetent of "her essential right and authority to make decisions regarding trial strategy," and would deny her a "vital tool" for advancing her "best interest." *Id.* at 494–95. The court thus construed the statute as intended to allow the alleged incompetent to waive a jury.

The court also held that the new statutory language implied that the alleged incompetent's waiver must be affirmatively shown on the record as in a criminal case. *Id.* at 495. The court purported to be making the decision (as to the need for affirmative waiver) from a "constitutional perspective" as well as from a "statutory perspective." *Id.* The court held that when the state attempts to exercise its *parens patriae* power to confine individuals for their own welfare, the procedural guarantees of the Fourteenth Amendment are applicable. *Id.* at 498.

In order to properly understand *Link*, it is necessary to keep in mind that *Link* dealt with Ms. Link's constitutional right to *have* a jury trial. Notwithstanding the court's use of the phrase "vital tool" in referring to the ability to waive a jury, *Link* does not establish that there is a fundamental due process right to *not have* a jury trial. *Id.* at 495. Instead, the court was merely recognizing that the legislature would have believed there was practical strategic value to the alleged incompetent in being able to choose whether to have a jury or waive a jury and had no reason to limit her choices so long as her choices were properly informed. The court, in requiring an affirmative waiver of jury trial, wished to make sure that individuals who are subject to civil commitment proceedings are not involuntarily deprived of their constitutional right to trial by jury. We do not think the court intended to create new constitutional jurisprudence as to a right to have a *bench* trial.

There is no constitutional right to a bench trial because the Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees a criminal defendant only the right to a trial by a jury – an impartial jury. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). If an impartial jury cannot be impaneled,[4] then the defendant is arguably entitled to dismissal of the case rather than trial to the bench because the provision of a bench trial does not preserve a criminal defendant's right to be tried by an impartial jury. The legislature will often choose, as it has done in § 475.075, to allow a party to have the

4. The courts "rarely find that an impartial jury is unobtainable." Jon Fieldman, *Singer v. United States and the Misapprehended Source of the Nonconsensual Bench Trial,* 51 U. Chi. L.Rev. 222, 239 (1984). *See, e.g., United States v. Stanford,* 589 F.2d 285, 299 (7th Cir.1978), cert. denied, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Daniels,* 282 F.Supp. 360 (N.D.Ill. 1968). *But see United States v. Schipani,* 44 F.R.D. 461 (E.D.N.Y.1968) (court refused to allow government to withdraw its consent to a jury waiver because of difficulty of finding impartial jury).

choice of a bench or jury trial, but it is not constitutionally compelled to allow a party to choose a bench trial. Accordingly, we see no constitutional right to a bench trial in criminal cases or civil commitment cases.

■ Acosta, in reality, is complaining about a lack of jury impartiality. The key issue, therefore, for purposes of due process analysis, is whether the trial court determined that it was impossible to impanel a jury that would provide a fair trial. In view of the constitutional preference for a jury trial, *Patton*, 281 U.S. at 312, 50 S.Ct. 253 it is difficult to argue that there is a right to a bench trial as long as procedures are available to ensure the impartiality of the jury. The trial court may have believed that a jury would not allow Acosta a fair trial, but the court made no such finding. Nor does the record reveal any data supporting the conclusion that a jury would be unable to serve as a factfinder with an objective mindset. While it is obviously true that the allegation that someone is a "sexually violent predator" stirs strong feelings, it is also true that jurors, when properly instructed and educated, have shown the ability to get past their initial emotional responses. If that were not the case, the criminal justice system would not be able to impartially try those charged criminally with having committed horrible, shocking and abominable crimes. While Acosta may have a preference for a bench trial, and while the court may have to take pains to ensure that a jury is able to objectively evaluate the evidence, there is no showing in this case, at least thus far, that Acosta cannot receive a fair trial from a carefully selected and properly instructed jury.

## Equal Protection

■ Acosta argues that even if there is no absolute right to be tried by the court alone, he ought to be entitled, on equal protection grounds, to at least the same benefit received by an accused in a criminal case in Missouri. He points out that in a criminal case the accused, with the consent of only *the court*, can waive a jury and be tried before a judge alone, over the objection of the prosecution. In a criminal case, the prosecution is allowed no right to demand a jury. Acosta argues that the proceedings under the SVPA are criminal in nature rather than civil, and therefore it violates his equal protection rights to allow him fewer rights than the defendant receives in a criminal case. He notes the many aspects which he says make this proceeding essentially a criminal proceeding.[5]

■ The characteristics of this proceeding are very similar to the characteristics of the Kansas law addressed in *Hendricks*. There, however, the United States Supreme Court determined that the proceeding was civil in nature and not criminal. *Hendricks*, 521 U.S. at 361, 117 S.Ct. 2072. Acosta fails to distinguish *Hendricks*.

5. Acosta notes the following: (1) the statute does not attempt to treat unconvicted persons who suffer from a mental abnormality, but instead applies to those already convicted of a sexual offense; (2) the Act targets those who have not completed the MOSOP program while in prison, and, therefore, may result in targeting those who maintain their innocence despite a conviction for a sexual offense; (3) the purpose of the statute is retributive and not remedial in nature, as evidenced by the fact that the Attorney General, acting on the recommendation of a five-member panel of prosecutors, makes the filing decision; (4) the statute makes no provision for treatment other than incarceration, and ignores principles of detention under the least restrictive environment guaranteed by mental health statutes; (5) the statute adopts a beyond-a-reasonable-doubt burden of proof; (6) the statute limits the right of a person to a jury trial; (7) the Act does not limit its application to those who are unable to control their dangerousness; (8) the sexually violent predator unit is located at Farmington Correctional Center and is not a part of the Southeast Missouri Mental Health Center; (9) treatment through MOSOP is not started immediately even when the subject is incarcerated in the Department of Corrections; and (10) a person committed under the Act is not allowed immediate release upon a showing that he is no longer dangerous or mentally impaired.

Missouri's Act, like the Kansas Act, also is not included within the criminal code. The Attorney General's petition is filed in Probate Court. Section 632.484.1. The Act makes provision for treatment. Section 632.495. By providing for treatment, the legislature "has indicated that treatment, if possible, is at least an ancillary goal of the Act, which usually satisfies any test for determining that the Act is not punitive." *Hendricks,* 521 U.S. at 368 n. 5, 117 S.Ct. 2072.

In any event, it is not clear that the civil-versus-criminal distinction is critical. In *In re Link,* the Missouri Supreme Court noted that labels or characterizations are not fully determinative of the safeguards which are necessary in a given proceeding. The principle of *In re Link,* that labels are less important than the substance of what is at stake in determining the level of due process, may thus invite examination of the interests on both sides, and may justify allowing either side a nonconsensual right to choose a jury.[6] *In re Link,* 713 S.W.2d at 495. While in some criminal cases, there may be a great deal at stake for both society and for the accused, in many other criminal cases it is the accused who has by far the greatest stake in the outcome. The nature of all SVPA cases, however, is such that, by definition, *both* society and the alleged predator have a significant stake in the outcome.[7] The "admitted lack of volitional control, coupled with a prediction of future dangerousness, adequately distinguishes [the sexually violent predator] from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." *Hendricks,* 521 U.S. at 360, 117 S.Ct. 2072. We conclude that the General Assembly believed that both sides had sufficiently strong interests at stake that either side should be allowed

an unqualified right to a jury trial. Thus, any strategic value in being able to select a bench trial must, at least in the absence of a showing that an impartial jury may not be obtained, yield to the other party's right to select a jury trial.

■ Acosta also compares the treatment of alleged sexually violent predators to others who are subjected to civil commitment proceedings. He points out that in proceedings under the current version of § 475.075, the person seeking to impose a guardianship on another person is not entitled to demand a jury trial on the petition. Only the alleged incompetent is granted the right to demand a jury trial. In contrast, under the SVPA, the Attorney General, who seeks to impose confinement and treatment on the detainee, is granted the right to demand a jury trial. Thus, Acosta notes that even persons facing only civil commitments enjoy more freedom to waive a jury over the objection of their adversary.

■ The equal protection clause of the Fourteenth Amendment to the United States Constitution demands that persons "similarly situated" be treated in a similar manner. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). If the statute provides different treatment for a "suspect class" or affects a fundamental right, then it receives strict scrutiny to determine whether the classification is necessary to accomplish a compelling state interest. *Missourians for Tax Justice Educ. Project v. Holden,* 959 S.W.2d 100, 103 (Mo. banc 1997) (quoting *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). If it does not burden a suspect class or a fundamental right, the issue to be decided is whether

---

**6.** *Link* focused on "the interests at stake for the affected individual." *Link,* 713 S.W.2d at 495. *Link* involved the right of an individual to manage her own financial affairs, and was not an SVPA case.

**7.** The very definition of "mental abnormality" speaks of an impaired volitional capacity which predisposes the person towards conduct which constitutes a "menace to the health and safety of others." Section 632.480(2).

the classification is rationally related to a legitimate state interest. *Id.* It has been held, for instance, that there is no "constitutional right [that] is violated when persons who suffer from severe disorders ... are treated differently from persons with less serious conditions." *Bailey v. Gardebring,* 940 F.2d 1150, 1153 (8th Cir. 1991).

Acosta fails to show in this case that the statutory scheme "operates to the disadvantage of some suspect class." Sexually violent predators do not compose a suspect class. *See Artway v. Attorney Gen. of State of N.J.,* 81 F.3d 1235, 1267–68 (3rd Cir.1996) (compulsive sex offenders do not constitute a suspect class and no fundamental rights are implicated in their registration as such). Acosta also fails, for the reasons discussed earlier, to show that a unilateral right to choose a bench trial is a fundamental right. Therefore, the state need have only a rational basis to justify the difference in treatment in question. The premise of the SVPA is that sexually violent predators suffer from a mental condition that differs substantially from the mental conditions which are the subjects of the usual civil commitment proceedings. Some mental abnormalities and emotional disturbances such as pedophilia may not qualify for commitment under other procedures. The Act is designed to address the problem presented by those individuals who are in fact likely to inflict profound harm on other persons, yet outwardly appear normal in all other respects. Such a person has already served his designated sentence for violating the criminal law, but because of lack of volitional capacity in the area of sexual deviancy, it cannot be assumed that the person's punishment had any deterrent effect on future conduct. We conclude that the state articulates a rational basis for allowing the state the right to a nonconsensual jury trial by arguing that both sides have a great deal at stake in SVPA cases and that either party should be entitled to a trial before that body traditionally regarded as most likely to provide a fair trial. Thus, the General Assembly could reasonably have chosen, as a general principle, to limit the freedom of either party to waive a jury by the right of the other party to demand a jury.

## The Hancock Amendment

■ The state also contends that the trial court erred in holding, *sua sponte,* that Article X of the Missouri constitution, the "Hancock" amendment, was violated by the statutory provision allowing the attorney general to demand a jury trial because the legislature had not allotted any additional funds to the county for the jury trial in Acosta's case.

The attorney general contends that the trial court erred in that neither Acosta nor the trial court had standing to raise the issue. Article X, section 16 of the Missouri Constitution provides that the state "is prohibited from requiring any new or expanded activities by counties and other political subdivisions without full state financing...." Section 23 of Article X provides for taxpayer standing to enforce the provisions of Article X:

> Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri supreme court, to enforce the provisions of sections 16 through 22, inclusive of this article and, if the suit is sustained, shall receive from the applicable unit of government his costs, including reasonable attorneys' fees incurred in maintaining such suit.

"[A]ny taxpayer" may bring an action to enforce the provisions of the Hancock amendment. The state points out that although the trial judge is a taxpayer, he did not "bring suit." The judge is not a party to the proceedings. The judge did not file any pleadings in the case, nor did he give the state an opportunity to defend. It is elementary that the role of the judge generally does not include injecting him-

self or herself as a party into the proceeding at hand.

Acosta argues that the judge has authority to raise this issue *sua sponte*, citing *Boone County Court v. State*, 631 S.W.2d 321 (Mo. banc 1982) in support. In *Boone County*, three judges filed a declaratory judgment action in their official capacity as duly elected judges of the Boone County Court, and in their individual capacities as taxpayers and citizens of Boone County, challenging the state's refusal to reimburse the county for a state mandated pay increase for the county collector. *Id.* at 323. The mere recitation of those facts distinguishes *Boone County Court* from the case at hand, in which the judge is not a party. The judge would presumably have standing as an individual to mount a Hancock challenge, but the judge did not bring suit as a taxpayer or as a custodian of county funds, but simply *sua sponte* raised and decided an issue which no party had raised. There is also no allegation here that Acosta is a taxpayer or that Acosta has the slightest interest in protecting the county budget. We agree with the state that the trial court exceeded its jurisdiction in raising an issue which purportedly affected the county, since neither the judge nor the county were parties to the proceeding.

Because we agree that the trial court lacked standing to raise the *Hancock* issue, we need not address the state's other arguments relating to the issue.

## Conclusion

For all the foregoing reasons, we make absolute our preliminary order herein. The trial court is directed to honor the state's demand for jury trial in the underlying case.

HOWARD and NEWTON, JJ., concur.