In the Matter of the Care and
Treatment of Thomas IN-
GRASSIA, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 80012.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 10, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2003.

Application for Transfer Denied
May 27, 2003.

Nancy Lynne Vincent, David C. Hemingway, Assistant Public Defenders, St. Louis, for appellant.

James Robert Lyton, Chief Deputy Attorney General, Jefferson City, MO, Jefferson City, for respondent.

SHERRI B. SULLIVAN, Judge.

### Introduction

Thomas Ingrassia (Ingrassia) appeals from a trial court judgment entered following a jury verdict finding Ingrassia to be a sexually violent predator (SVP) and committing Ingrassia to the custody of the director of the Department of Mental Health under Section 632.480 [1] et seq. (the SVP statute). During the pendency of his appeal, Ingrassia escaped from the Department of Mental Health facility to which he was committed by the trial court's judgment. The State requests that we apply the escape rule to dismiss Ingrassia's appeal. We dismiss.

### Factual and Procedural Background

In 1976, Ingrassia pleaded guilty to one count of rape and was sentenced to two years' imprisonment. In 1979, Ingrassia pleaded guilty to two counts of forcible rape, one count of sodomy, and one count of assault with intent to ravish and was sentenced to concurrent twenty-five year terms of imprisonment. The pleas stemmed from four separate incidents.[2]

Ingrassia was released on parole in March 1996 and discharged from the custody of the Department of Corrections in 1997. In November 1999, Ingrassia was charged with one count of misdemeanor stalking and one count of misdemeanor sexual misconduct in the third degree.

Later in November 1999, the State filed a Petition for Detention and Evaluation alleging that Ingrassia may meet the definition of a SVP under the SVP statute.

---

**1.** All statutory references are to RSMo. Cum. Supp. (1999), unless otherwise indicated.

**2.** The first incident is summarized as follows: The victim's car broke down on a street. Ingrassia stopped and offered to help the victim. He persuaded her to get in his car so that he could take her to call her husband. At the first building, Ingrassia said he would go in and call the victim's husband for her. The victim agreed and gave Ingrassia the telephone number. Ingrassia returned and told the victim that her husband said that it was okay for him to take her to a service station. After driving a couple of miles, Ingrassia feigned car trouble and pulled over to the side of the highway. He got out of his car, then got back into the car, and told the victim that he had lost his keys. He asked her to help him find the keys and she agreed. As the victim was looking for the keys, Ingrassia jumped her from behind, threw her down a ravine, and pushed her head into the dirt and grass so that she could not breathe. He then dragged her by the feet towards the woods. Ingrassia threatened the victim with a screwdriver and made her take off her clothes. Ingrassia raped the victim three times. He then allowed her to put her clothes back on and they walked along the highway. Eventually, Ingrassia pulled the victim into the grass and raped her a fourth time.

The second incident is summarized as follows: The victim was walking on a street. Ingrassia approached the victim from behind, grabbed her and took her into a field, where he raped and sodomized her.

The third incident is summarized as follows: The victim walked past a restaurant that Ingrassia was leaving. He tackled her and they rolled down a hill into a creek. Ingrassia dragged the victim to a narrow area between fences behind a strip mall. He told her repeatedly they were going to have sex, hit her, and got on top of her. The victim told Ingrassia that a police car in a nearby parking lot would return. Ingrassia ran away.

The fourth incident is summarized as follows: The victim was walking on a street. Ingrassia approached the victim from behind, grabbed her, placed his hand over her mouth, and dragged her up a hill into a rear yard of a home. Ingrassia removed the victim's clothes and raped her.

Subsequently, the State filed a petition alleging that Ingrassia is a SVP under the SVP statute. The cause proceeded to a jury trial. Ingrassia filed motions for directed verdict at the close of the State's case and at the close of all the evidence, which the trial court denied.

The jury found Ingrassia to be a SVP under the SVP statute. In April 2001, the trial court entered a judgment in accordance with the jury verdict and committed Ingrassia to the custody of the director of the Department of Mental Health for control, care and treatment. Ingrassia filed a motion for new trial, which was denied by operation of Rule 78.06.[3] Ingrassia appeals from the trial court judgment.

### Discussion

The State filed a Motion to Dismiss Ingrassia's appeal, and Ingrassia filed a response to the motion. The motion requests us to apply the escape rule to dismiss Ingrassia's appeal. In early October 2001, during the pendency of his appeal, Ingrassia escaped from the Department of Mental Health facility at which he was committed by the trial court's judgment. The circumstances surrounding his escape are not of record. Subsequently, the State filed an Application for Order of Contempt and Arrest, and the trial court issued a capias warrant for Ingrassia's arrest. In his response to the State's motion, Ingrassia admits his "leave of absence" from the facility. At the time of the argument on Ingrassia's appeal, Ingrassia's whereabouts remained unknown.

Preliminarily, we note that although the SVP statute provides for treatment, and thus suggests that the statute is not punitive, the statute also is designed to protect the public from "those individuals who are in fact likely to inflict profound harm on other persons, yet outwardly appear normal in all other respects." *State ex rel. Nixon v. Askren,* 27 S.W.3d 834, 841–842 (Mo.App. W.D.2000). Such individuals have already served their designated sentence for violating the criminal law, but because of a mental abnormality, as defined under the SVP statute,[4] it cannot be assumed that the punishment had any deterrent effect on future conduct. *Id.* at 842. This mental abnormality differs substantially from the mental conditions that are the subjects of the usual civil commitment proceedings. *Id.* Thus, both the individual alleged to be a SVP and society have a stake in the outcome of a civil commitment proceeding under the SVP statute. *Id.* at 841.

The escape rule is a judicially created doctrine that operates to deny the right of appeal to a defendant who escapes justice. *State v. Troupe,* 891 S.W.2d 808, 809 (Mo. banc 1995). The escape rule traditionally has been applied to direct appeals from criminal proceedings, *see State v. Wright,* 763 S.W.2d 167 (Mo.App. W.D. 1988), and to appeals from post-conviction relief motions, *see Stradford v. State,* 787 S.W.2d 832 (Mo.App. E.D.1990) (applying the escape rule to Rule 29.15 proceedings); *Rulo v. State,* 804 S.W.2d 866 (Mo.App. E.D.1991) (applying the escape rule to Rule 24.035 proceedings). However, determining whether to apply the escape rule

---

**3.** All rule references are to Mo. R. Civ. P.2002, unless otherwise indicated.

**4.** Section 632.480(2) defines "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others."

is within our discretion. *Troupe,* 891 S.W.2d at 811.

Missouri courts have advanced numerous rationales for the application of the escape rule. For example, one rationale is the need for a court to have control over a defendant before rendering its decision on appeal. *State v. Carter,* 98 Mo. 431, 11 S.W. 979, 980 (1889). Without such control, a defendant "places himself in a position to speculate on the chances of reversal, meanwhile keeping out of the reach of justice, and prepared to render the judgment of reversal nugatory or not, at his option." *Id.*

Additional rationales for the application of the escape rule include lessening administrative difficulties caused by a defendant's long absence, reducing prejudice to the State in the event of a remand for a new trial, discouraging escape and encouraging voluntary surrender, and promoting the dignified operation of the appellate court. *State v. Kearns,* 743 S.W.2d 553, 554–555 (Mo.App. S.D.1987).

The court in *State v. Wright,* 763 S.W.2d 167 (Mo.App. W.D.1988), articulated another rationale for the application of the escape rule. The court stated that the escape rule preserves respect for our system of justice, a system that favors law over expediency. *Id.* at 168. The court continued:

Those who seek the protection of this legal system must, however, be willing to abide by its rules and decisions. [The defendant] comes before this court seeking vindication of her Fourth Amendment rights. Earlier, however, when she absconded she showed her reluctance to accept the decision of the trial court or to await the vindication of her rights by this court. She may not selectively abide by the decisions of the

courts. By absconding, she has forfeited her right to appeal.

(Citations omitted.) *Id.* at 168–169.

Although traditionally the escape rule has been applied in criminal and post-conviction relief proceedings, recently our colleagues in the Western District applied the escape rule to a civil proceeding. *Spencer v. Ouverson,* 98 S.W.3d 69 (Mo. App. W.D.2002) (prisoner brought civil action seeking recovery of unpaid wages in a work release program). As part of the court's rationale for doing so, it stated:

Moreover, if we will sometimes exercise our discretion to dismiss a civil appeal merely because a party has not complied with a procedural or a briefing rule, it makes sense that we should have discretion to dismiss an appeal when a party has not complied with the requirements of the justice system in so direct a way as to escape from the custody of the [court-ordered facility].

We find that the rationales for the application of the escape rule expressed in the cases cited above are relevant to a civil commitment proceeding under the SVP statute. First, by escaping, Ingrassia has removed himself from our control before we have rendered our decision on his appeal. Unlike a typical civil proceeding, a consequence of a civil commitment proceeding under the SVP statute may be the confinement of an individual to a secure facility. Thus, control over a defendant is necessary in a civil commitment proceeding under the SVP statute. By escaping from custody, Ingrassia flouts the authority of the courts. *See Troupe,* 891 S.W.2d at 811.

Further, Ingrassia's escape causes several administrative difficulties. For example, during the pendency of Ingrassia's appeal, new counsel entered an appearance on Ingrassia's behalf, requiring counsel to

pursue the appeal without ever having communicated with his client. Administrative difficulties also occur in the implementation of the mandate of the appeal. For example, were we to review Ingrassia's appeal on the merits and decide to remand for a new trial, the question arises of how, or even whether, the State could proceed with a trial in Ingrassia's absence or without a waiver of his right to be present. Thus, prejudice to the State may result were we to remand for a new trial in Ingrassia's absence.

Moreover, the State has an interest in discouraging escape from the facility at which an individual found to be an SVP is committed, especially given the potential for future dangerousness of the individual, as discussed above.

Additionally, Ingrassia's escape violates the trial court's judgment from which he appeals and demonstrates disrespect for our system of justice. The trial court's judgment committed Ingrassia to the custody of the director of the Department of Mental Health at a secure facility "until such time as his mental abnormality has so changed that he is safe to be at large." *See* Sections 632.498, 632.501, 632.504. At the time of his escape and until the mandate of any appeal, Ingrassia remains subject to this judgment. By escaping during the pendency of his appeal, Ingrassia seeks protection from the legal system while disobeying its rules and decisions.[5] Ingrassia chose the self-help remedy of escape. Therefore, Ingrassia has forfeited his right to appeal.

### Conclusion

Exercising our discretion, we find that the application of the escape rule is war-

ranted to dismiss Ingrassia's appeal. The State's Motion to Dismiss is granted.

LAWRENCE E. MOONEY, P.J., and KATHIANNE KNAUP CRANE, J., concur.

---

5. We note that by escaping, Ingrassia has also relinquished his right during his escape under the SVP statute to an annual review of his mental condition, Section 632.498, and is not receiving his ordered treatment.