# IN THE SUPREME COURT OF IOWA

No. 84 / 05-1752

Filed February 1, 2008

**IN RE THE DETENTION OF
JASON D. HENNINGS,**

**JASON D. HENNINGS,**

Appellant.

---

Appeal from the Iowa District Court for Emmet County, Don E. Courtney (jury demand) and Joseph J. Straub (trial), Judges.

Respondent appeals from an order committing him to the custody of the department of human services pursuant to Iowa Code chapter 229A (2005). **AFFIRMED.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Cristen Douglass and Andrew Prosser, Assistant Attorneys General, and Douglas R. Hansen, Assistant County Attorney, for appellee State of Iowa.

**HECHT, Justice.**

A jury found Jason Hennings is a "sexually violent predator" (SVP), as defined in Iowa Code section 229A.2(11) (2005), and the district court consequently committed him to the custody of the department of human services. On appeal, Hennings asserts the district court erred in denying his motion to strike the State's jury demand and his motion for a directed verdict. We affirm.

## I. Factual and Procedural Background.

On November 2, 1999, the State charged Jason Hennings, who was then nineteen years of age, with six counts of sexual abuse in the third degree, in violation of Iowa Code section 709.4(2)(*b*) (1999); three counts of indecent contact with a child, in violation of section 709.12(2); and one count of dissemination and exhibition of obscene material to minors, in violation of section 728.2. The charges stemmed from Hennings's interactions in 1999 with various female teenagers who ranged in age from thirteen to sixteen years old. Hennings and the State reached a plea agreement calling for dismissal of all charges except one sexual abuse charge, to which Hennings pled guilty. The court sentenced Hennings to an indeterminate prison term not to exceed ten years in the custody of the director of the department of adult corrections.

On March 1, 2005, just days before Hennings's scheduled release from prison, the State filed a petition alleging Hennings is an SVP. *See* Iowa Code § 229A.2(11) (2005) (defining SVP); *id.* § 229A.4(1) (authorizing the Attorney General's filing of a petition alleging "a person presently confined" is an SVP when a prosecutor's review committee has concluded the person meets the definition of an SVP). After a hearing, the district court found probable cause existed to believe Hennings is an SVP, ordered Hennings's

placement in a secure facility for evaluation, and set a date for trial. *See id.* § 229A.5(2), (5) (requiring a court to determine, after a hearing, "whether probable cause exists" that a respondent is an SVP, and in instances where probable cause exists, to direct the respondent's transfer to a secure facility for evaluation).

The State filed a jury demand.[1] Hennings filed a motion to strike the jury demand on the ground that section 229A.7(4) violates the Equal Protection and Due Process Clauses of the United States and Iowa Constitutions. The district court denied the motion to strike.

At the ensuing jury trial, in order to meet its burden of showing Hennings is an SVP, the State had to prove, in relevant part, that Hennings "suffers from a mental abnormality which makes [him] likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." *Id.* § 229A.2(11); *see also id.* § 229A.2(5) (defining "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others"). To establish the existence of a mental abnormality making Hennings likely to engage in predatory acts if not confined, the State introduced the testimony of Dr. Harry Hoberman, who had interviewed Hennings and reviewed his medical, court, and other records. Dr. Hoberman testified Hennings suffers from pedophilia, paraphilia "not otherwise specified" (NOS), antisocial personality disorder,

---

[1]Section 229A.7(4) provides, in relevant part:

> The respondent, the attorney general, or the judge shall have the right to demand that the trial be before a jury. Such demand for the trial to be before a jury shall be filed, in writing, at least ten days prior to trial. If no demand is made, the trial shall be before the court.

and either a mixed personality disorder or a personality disorder NOS. Dr. Hoberman also opined that these disorders impair Hennings's impulse control and render him likely to commit future sex offenses if not confined.

At the close of the State's case, Hennings moved for a directed verdict on the ground the State failed to prove he suffers from a mental abnormality rendering him likely to engage in predatory acts if not confined. The court overruled the motion.

Hennings then presented the videotaped deposition of Dr. Stephen Hart. Based on his review of Hennings's records, Dr. Hart found the evidence inconclusive regarding whether Hennings has a "mental abnormality," as defined in chapter 229A. He stated Hennings may suffer from a bipolar mood disorder with the potential to later develop into schizoaffective disorder. But according to Dr. Hart, even assuming Hennings currently suffers from either of these conditions, no evidence exists that they predispose him to commit sexually violent offenses. Dr. Hart disagreed with Dr. Hoberman's diagnoses of paraphilia and pedophilia because no evidence demonstrates Hennings is attracted to "inappropriate sexual objects," and Hennings committed sexual offenses during a period shorter than six months.

Dr. Robert Prentky, who had both interviewed Hennings and reviewed his mental health records, also testified. In Dr. Prentky's opinion, Hennings suffers from a bipolar disorder or schizoaffective disorder, but these disorders are not mental abnormalities predisposing him to commit future acts of sexual violence. He testified Dr. Hoberman's diagnoses of pedophilia and paraphilia are inapposite because Hennings's aberrant behavior did not extend for six months or longer. Dr. Prentky also rejected a diagnosis of pedophilia because Hennings's penile plethysmograph examination and

other relevant tests evidenced Hennings exhibits no sexual interest in children. Dr. Prentky also disputed the pertinence of the personality disorder diagnosis offered by Dr. Hoberman given the lack of evidence Hennings has "a long history of conduct disorder" and "aggressive acting out behavior." After Dr. Prentky's testimony, Hennings renewed his motion for a directed verdict, which was again overruled. The jury returned a verdict finding Hennings is an SVP, and the court consequently committed Hennings to the custody of the department of human services.

Hennings has appealed. He asserts the district court erred in overruling his motion to strike the State's jury demand because Iowa Code section 229A.7(4) violates the Due Process and Equal Protection Clauses of the United States and Iowa Constitutions. He further contends the district court erred in overruling his motion for directed verdict because the State failed to offer sufficient evidence that he has a mental abnormality rendering him likely to commit sexually violent offenses if not confined.

**II.	Standards of Review.**

We review Hennings's constitutional claims de novo. *In re Det. of Williams*, 628 N.W.2d 447, 451 (Iowa 2001). We review the district court's ruling on a motion for directed verdict for correction of errors at law. Iowa R. App. P. 6.4; *State v. Swanson*, 668 N.W.2d 570, 574 (Iowa 2003).

**III.	Analysis.**

**A.	Due Process Claim.** The United States and Iowa Constitutions preclude deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. We consider these state and federal constitutional provisions "equal in scope, import, and purpose." *Atwood v. Vilsack*, 725 N.W.2d 641, 647 (Iowa 2006) (internal quotation marks and citation omitted). Although we seek to

"harmoniz[e] our decisions with those of the Supreme Court when reasonably possible," we "jealously guard our right and duty to differ in appropriate cases" presenting state constitutional claims. *Id.* (internal quotation marks and citation omitted).

Governmental action violates principles of substantive due process when it "shocks the conscience" or impinges upon rights " 'implicit in the concept of ordered liberty.' " *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987)). We begin our assessment of Hennings's substantive due process claim by identifying the right allegedly violated by government action. *Id.* (citing *In re Det. of Cubbage,* 671 N.W.2d 442, 446 (Iowa 2003)). Hennings asserts section 229A.7(4) deprives him of his fundamental right to a fair trial by granting the State the right to demand and obtain a jury trial over his objection.

Hennings's interest in a fair trial is fundamental. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075, 111 S. Ct. 2720, 2745, 115 L. Ed. 2d 888, 923 (1991) ("Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors."); *see also In re Det. of Morrow,* 616 N.W.2d 544, 549 (Iowa 2000) ("Due process requires fundamental fairness in a judicial proceeding." (internal quotation marks and citation omitted)).[2] The right to a fair trial, however, does not guarantee

---

[2]It appears Hennings's argument that a jury trial in an SVP case would *violate* due process is rather novel, as individuals facing civil commitment have argued for over a century that requiring a bench trial in civil commitment or "sexual psychopath" cases violates due process. *See, e.g., Chavannes v. Priestly*, 80 Iowa 316, 320, 45 N.W. 766, 768 (1890) (holding that insanity judgment and committal without providing notice or a jury trial does not violate due process); *In re Dowdell*, 47 N.E. 1033, 1034 (Mass. 1897) (holding due process does not require trial by jury in civil commitment cases); *State ex rel. Pearson v. Probate Court of Ramsey County*, 287 N.W. 297, 303 (Minn. 1939) (denial of jury trial in sexual psychopath proceeding did not violate due process), *aff'd,* 309 U.S. 270, 60 S. Ct. 523, 84 L. Ed. 744 (1940); C. Peter Erlinder, *Of Rights Lost and Rights Found: The Coming Restoration of the Right to a Jury Trial in Minnesota Civil Commitment Cases,* 29 Wm. Mitchell L. Rev. 1269, 1269 n.3 (2003) (arguing the right to a jury trial in civil commitment proceedings should be protected as a due process right).

a trial before the decisionmaker of the respondent's choosing; it simply guarantees a trial before an impartial decisionmaker. *Singer v. United States*, 380 U.S. 24, 36, 85 S. Ct. 783, 790, 13 L. Ed. 2d 630, 638 (1965). We are not convinced the issues in an SVP proceeding are of such an inherently prejudicial character that it would be impossible or unlikely to empanel an impartial jury. The evidence routinely offered in cases brought under chapter 229A tends to prove the respondent has been convicted or charged with a sexually violent offense and suffers from a mental abnormality that predisposes him to commit such repugnant acts in the future if not confined in a secure facility. Although such evidence could elicit in a fact-finder a strong negative reaction against the respondent, "jurors, when properly instructed and educated, have shown the ability to get past their initial emotional responses." *State ex rel. Nixon v. Askren*, 27 S.W.3d 834, 840 (Mo. Ct. App. 2000). Juries are often called upon in our courts to decide cases presenting profoundly disturbing evidence. If they were unable to find the facts in such cases with an appropriate mindset, the viability of the jury system would be seriously undermined and "the criminal justice system would not be able to impartially try those charged criminally with having committed horrible, shocking and abominable crimes." *Id.* The venerable role of the jury in our civil justice system would likewise be substantially depreciated.

After carefully reviewing this case, we do not share Hennings's complete lack of confidence in a jury's ability to serve as an impartial fact-finder notwithstanding the highly charged and potentially prejudicial nature of the evidence presented in cases of this type. Hennings has not demonstrated that a jury trial in an SVP case is inherently more likely to be unfair than a trial to the court. *See* Lisa Kavanaugh, Note, *Massachusetts's*

*Sexually Dangerous Persons Legislation: Can Juries Make a Bad Law Better?*, 35 Harv. C.R.–C.L. L. Rev. 509, 510 n.9 (2000) (noting in the six years after adoption of Massachusetts's SVP statute, a higher percentage of detainees were discharged from detention after jury trials than after bench trials).

Although "trial by jury has its weaknesses and potential for misuse," *Singer*, 380 U.S. at 35, 85 S. Ct. at 790, 13 L. Ed. 2d at 638, the institution is not without safeguards to advance the goal of fairness. Potential jurors are subjected to voir dire examination, and the parties are allowed challenges for cause and peremptory challenges. *See* Iowa R. Civ. P. 1.915(6)(*j*) (authorizing challenge of a juror for cause if it appears the juror "has formed . . . an unqualified opinion on the merits of the controversy, or shows a state of mind which will prevent the juror from rendering a just verdict"); Iowa R. Civ. P. 1.915(7) (authorizing parties to peremptorily strike potential jurors). The district court may also impose, within its considerable discretion, reasonable limitations on the admission of evidence to ensure the jury finds facts based on the evidence rather than extraneous matters. If, despite these and other available procedural protections, the district court concludes an impartial jury cannot be empaneled in the locality of the trial, venue may be changed. *See* Iowa R. Civ. P. 1.801(3) (authorizing change of venue if a party cannot obtain a fair trial). Post-trial remedies, including a judgment notwithstanding the verdict and a new trial, are also available to assure respondents' right to a fair trial. *See* Iowa R. Civ. P. 1.1003, 1.1004. These time-honored procedural protections help ensure the empanelling of an impartial jury, and justify the Framers' confidence in the jury as "the tribunal . . . most likely to produce a fair result" in an adversarial system. *Singer*, 380 U.S. at 36, 85 S. Ct. at 790, 13 L. Ed. 2d at 638. The same procedural safeguards and our own

confidence in the jury system cause us to conclude the Due Process Clauses of the federal and state constitutions do not entitle Hennings to a bench trial in this case.

**B.** **Equal Protection Claim.** The United States and Iowa Constitutions guarantee equal protection under the law. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. Although we have "generally applied the same analysis to federal and state equal protection claims, this court has not foreclosed the possibility that there may be situations where differences in the scope, import, or purpose of the two provisions warrant divergent analyses." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 5 (Iowa 2004). Hennings does not contend the analysis to be applied to his claim under the Iowa Constitution should be different than that applied under the federal Equal Protection Clause. Accordingly, although we maintain the right "to fashion our own test for examining claims brought under our state constitution," we again choose to "delay any consideration of whether a different analysis is appropriate to a case in which this issue was thoroughly briefed and explored." *Id.* at 6.

The Equal Protection Clauses of the United States and Iowa Constitutions require equal treatment of similarly situated people. *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313, 320 (1985)). Dissimilar treatment of people who are situated differently does not violate equal protection. *Id.* (citing *Bruns v. State*, 503 N.W.2d 607, 610 (Iowa 1993); *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975)). A law is constitutional so long as members of the same class are treated the same. *Id.* (citing *Hack*, 228 N.W.2d at 43).

We begin our analysis of an equal protection claim by determining the rights implicated by the challenged classification and the appropriate

standard of constitutional review. *See Williams*, 628 N.W.2d at 452. If the two groups are not similarly situated, we need not scrutinize the legislature's differing treatment of them. *Id.* We apply a rational basis test if the groups are similarly situated but no suspect class or fundamental right is involved. *Id.*

Hennings contends "persons facing loss of liberty," including SVP respondents and defendants in criminal cases, are similarly situated.[3] He contends these persons are all similarly situated because their liberty is at risk in judicial proceedings, and they must therefore be treated similarly with respect to their right to choose a bench trial.[4] We disagree that these individuals are similarly situated.

Respondents in SVP proceedings are generally different from defendants in criminal cases insofar as respondents in SVP proceedings allegedly have (1) in the past been convicted of or charged with committing a sexually violent offense, and (2) a mental abnormality making it likely they will commit sexually violent predatory acts if not confined and treated. The legislative findings articulated in section 229A.1 clearly express the conclusion that SVPs, because of their mental abnormality and concomitant inability to control their predatory acts of sexual violence, pose a greater risk of recidivism than criminal defendants generally. The legislature could

---

[3]Hennings does not expressly contend the class of "persons facing loss of liberty" includes respondents in involuntary civil commitment proceedings under chapter 229, and his equal protection argument focuses entirely on the distinction between the respective rights of criminal defendants and SVP respondents to choose whether to have a bench or jury trial. We therefore do not address the issue of whether civil commitment respondents and SVP respondents are similarly situated or if there is a rational basis for treating them differently with respect to their right to determine the mode of trial.

[4]Hennings notes that SVP respondents are the only persons in the class who are denied the opportunity to unilaterally choose the mode of trial. *Compare* Iowa Code § 229A.7(4) (granting the State and the judge the right to demand a jury trial in SVP cases), *with* Iowa R. Crim. P. 2.17 (allowing defendants in criminal cases the right to waive a jury trial and choose a bench trial).

reasonably conclude that this heightened risk of recidivism by SVPs and the danger to the public resulting from that risk gives the State a correspondingly greater interest in the outcome of SVP cases than it has in some criminal cases.

> While in some criminal cases, there may be a great deal at stake for both society and the accused, in many other criminal cases it is the accused who has by far the greatest stake in the outcome. The nature of all SVPA cases, however, is such that, by definition, *both* society and the alleged predator have a significant stake in the outcome. [*Kansas v.*] *Hendricks*, 521 U.S. [346], 360, 117 S. Ct. 2072, [2081], 138 L. Ed. 2d 501, 514 [(1997)].

*Askren*, 27 S.W.3d at 841 (emphasis in original). The State's heightened stake in the outcome of SVP cases distinguishes them from criminal cases, and in our view, provides a minimally sufficient foundation for our conclusion that the parties to SVP cases are not similarly situated to the parties in criminal cases. The classification therefore does not violate equal protection.

**C.** **Sufficiency of the Evidence.** Our review of rulings on motions for directed verdict is for correction of errors at law. Iowa R. App. P. 6.4. We view the evidence in the light most favorable to the party opposing the motion. Iowa R. App. P. 6.14(6)(*b*); *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 251 (Iowa 1991). We review the district court's ruling to determine whether the State presented substantial evidence on each element of the claim. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 391 (Iowa 2001). Evidence is substantial if a jury could reasonably infer a fact from the evidence. *Balmer v. Hawkeye Steel*, 604 N.W.2d 639, 640 (Iowa 2000).

Dr. Hoberman testified Hennings suffers from a mental abnormality rendering him likely to commit predatory acts constituting sexually violent

offenses if not confined. The jurors' finding that Hennings is an SVP suggests the jury chose to believe Dr. Hoberman rather than the defense's expert witnesses, who testified to the contrary. The jury was free to reject the testimony of Hennings's expert witnesses and to instead accept the testimony of Dr. Hoberman. *See Eickelberg v. Deere & Co.*, 276 N.W.2d 442, 447 (Iowa 1979) ("The trier of fact is not bound to accept expert testimony, even if uncontradicted . . . ."). Hennings's motion for directed verdict was clearly without merit.

**IV.    Conclusion.**

We conclude Iowa Code section 229A.7(4) does not violate the Due Process and Equal Protection Clauses of the United States and Iowa Constitutions. The district court did not err in denying Hennings's motion for a directed verdict.

**AFFIRMED.**